## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

JOHN B. SMITH & others *vs.* AMOZ SMITH & others.

Dukes County.   October 25, 1888. — November 27, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Low Land Commissioners — Tenure — Nuisance — Equity — Multiplicity
of Actions — Injunction — Costs.*

Commissioners were appointed in 1882, under the Pub. Sts. c. 189, on a petition of
littoral proprietors and lessees of fishing rights, to regulate the flowage and
drainage of low lands about two great ponds, connected with each other by a
strait and separated from the ocean by a narrow strip of beach, which retained
their waters and caused them to overflow much of such lands.  Until 1888,
openings were cut by them annually through the beach from one pond or the
other to the ocean, which were closed up successively by the action of the ocean,
thus in each year alternately draining, flowing, and more or less affecting such
low lands and fisheries.  In that year, when they were about to have a hearing
preliminary to again cutting such a channel from one of the ponds to the ocean,
several of the littoral owners upon the other pond, who were also lessees, filed
a bill in equity to enjoin them from so doing.  *Held*, that the authority of the
commissioners under their original appointment had determined, and that a per-
petual injunction should issue to prevent them from making further openings.

BILL IN EQUITY, filed in the Superior Court on February 29,
1888, brought originally by John B. Smith against Amoz Smith,
David Fisher, and George Huxford, commissioners appointed
under the Pub. Sts. c. 189, to prevent them from keeping up

the waters of Great Pond, and from lowering the waters of Job's Neck Pond, both situated in Edgartown. Hearing before *Dunbar*, J., who reported the case for the determination of this court. The facts appear in the opinion.

*H. M. Knowlton*, for the plaintiffs.

*H. K. Braley & J. N. Pierce*, for the defendants.

KNOWLTON, J. The plaintiffs concede that the facts of this case fail utterly to support the bill for the principal purpose for which it was brought.

John B. Smith, the original plaintiff, alleged, in substance, that he was one of the littoral proprietors upon Great Pond in Edgartown, and one of numerous joint lessees of fishing rights in that pond and in Job's Neck Pond; that the original defendants, Amoz Smith, David Fisher, and George Huxford, were acting as commissioners, appointed in 1882 under a statute to superintend and regulate the flowing and the draining of the low lands and meadows around said ponds; that an opening should be made to connect Great Pond with the ocean, and to lower the water in it to a level with the waters of the ocean, both on account of the lands around it, and for the better cultivation of fish in it; that the defendants refused to make such an opening, and were proposing and intending to open a passage through the beach between the waters of Job's Neck Pond and the waters of the ocean; and that neither of the ponds had any natural outlet, but that there was a strait connecting the two, through which, if one was lowered by cutting a passage from it to the ocean, the waters of the other would flow out, lowering that also, but not nearly so much as if an opening from that had been cut directly to the ocean.

He also alleged that, if an opening was made through the beach from Job's Neck Pond to the ocean, the food fish necessary for the sustenance of the perch artificially cultivated in the ponds would not pass through the opening to Job's Neck Pond and thence through the strait to Great Pond, and that, if the opening was made from Job's Neck Pond, the waters of Great Pond would be so far drawn down through it as to make it impossible to construct and maintain a proper opening from Great Pond directly to the ocean, inasmuch as the whole head of water in Great Pond was needed to aid with its force in

making the opening. The first prayer of the bill was that the defendant should be enjoined from keeping up the head of water in Great Pond, and the second was that they should be enjoined from opening the beach between Job's Neck Pond and the ocean.

A preliminary injunction was issued, which was subsequently modified so as not to affect the rightful authority of the commissioners, if any, under the statutes.

The manifest purpose of the bill was to compel the original defendants to lower the waters of the ponds by opening the beach from Great Pond to the ocean, and not by opening it from Job's Neck Pond to the ocean. It is obvious that this court has no jurisdiction to compel the original defendants to open a channel from Great Pond to the ocean, and the plaintiff Smith cannot obtain through this proceeding the benefit to his property on Great Pond which he hoped for. He now asks us to retain the bill for the purpose of enjoining the defendants from opening the beach between the ocean and Job's Neck Pond. The bill was amended by joining as parties the other lessees of the fishing interests in the two ponds, twenty-four in number, nineteen of whom were joined as defendants, and five (who were littoral owners on Great Pond) were joined as plaintiffs. Amoz Smith and David Fisher, two of the original defendants, were also lessees.

The question in the case is whether the plaintiffs are entitled to the injunction for which they now ask. The original defendants were appointed commissioners under the provisions of the Pub. Sts. c. 189, §§ 1, 2, and they have no official authority except what is derived from that chapter. The plaintiffs' counsel contends that such changes as the defendants originally attempted to make were not authorized under that statute. Whether he is correct in that contention it is unnecessary to decide. For if not, we are of opinion, upon another ground, that the defendant commissioners were not authorized to draw off the waters of Job's Neck Pond at the time this bill was filed. To hold otherwise would be, in effect, to make their official existence perpetual. For they were appointed in 1882, and soon afterwards they organized and did all that their appointment required of them, if the Public Statutes were appli-

cable to an improvement such as they made. But in a few months the forces of nature put back the ponds and the lands about them into their former condition, and again they did work like that referred to in the original petition. More than five years had elapsed from the time of their appointment, and they were about to go forward, and have a hearing, and do the same work which they were appointed to do in the beginning, and which they had annually done during the whole period of their official existence. The report indicates that, if they should continue their proceedings, there would be the same reason for such action every year, for an indefinitely long time in the future, as there was when this bill was filed.

But the statute under which they were appointed contemplates improvements which can be completed within a reasonable time, and which will then need no further attention than to manage the structures which have been provided. Under the Pub. Sts. c. 189, § 4, the work is " to be completed according to their directions." They are then, by § 6, to " assess the whole charge and expense of the improvements and of executing the commission among the proprietors," and to appoint a collector to collect the moneys assessed, and by § 10, " after the completion of the business," they are to " make a return to the court of their doings under the commission." All these proceedings seem to contemplate a commission which can be fully executed, and which will not give perpetual authority.

But after the petition was filed under which these commissioners were appointed, the Legislature passed the special act of 1881, c. 75, for the management and improvement of these ponds, with provisions adapted to their peculiar situation. And we are of opinion that the original defendants, appointed under the Public Statutes, had not the continuous rights and extended jurisdiction which they now claim. It follows that, when this bill was filed, they had no right to cut a channel to the ocean from either pond.

The only remaining question is whether this is a proper case for the exercise of equitable jurisdiction. The purpose for which jurisdiction in equity to enjoin a nuisance is commonly entertained, is to prevent an injury for which there is no adequate remedy at law. Equity will not assume jurisdiction merely to

determine a question of legal right. To justify the interposition of the court, there must be occasion for the peculiar relief which an injunction gives, or there must be some other ground for the exercise of equitable jurisdiction. Under our statute, it is unnecessary, where the legal right is not clear, to require the plaintiff to first establish it at law, if in other respects he shows a case for proceedings in equity.

It is held that the remedy at law is not adequate and complete, and that there is consequently jurisdiction in equity to enjoin a nuisance where it is an erection or change of a permanent character, or anything that will work an irreparable injury, as in *Cadigan* v. *Brown*, 120 Mass. 493, in *Creely* v. *Bay State Brick Co.* 103 Mass. 514, and in *Nash* v. *New England Ins. Co.* 127 Mass. 91; or where it will cause an injury which is continuous in its character, from which damages will constantly be accruing, as by the diversion or continuous corruption of water; or where a covenant is sought to be enforced under which a plaintiff's right is merely equitable and not enforceable in his own name by a suit at law, as in *Whitney* v. *Union Railway*, 11 Gray, 359, and in *Parker* v. *Nightingale*, 6 Allen, 341; or where plaintiffs have rights in common, or, as against the defendant, all have the same rights, which can best be determined and regulated in a single suit in equity, as in *Ballou* v. *Hopkinton*, 4 Gray, 324, and in *Bardwell* v. *Ames*, 22 Pick. 333. See also *Sheffield Waterworks* v. *Yeomans*, L. R. 2 Ch. 8; *Powell* v. *Powis*, 1 Y. & J. 159, *McRoberts* v. *Washburne*, 10 Minn. 23.

It is not found in the report of the case at bar, that the act which the plaintiffs seek to enjoin would cause them any actual damage. The report goes no further than to say that the fisheries in both ponds, and the lands around the ponds, "are affected more or less by the overflowing and the draining of the water." No facts are found from which we can infer that that effect is detrimental to the plaintiffs. Indeed, the report indicates that the opening of Job's Neck Pond would benefit the plaintiff's lands on Great Pond, and that their complaint is that the property would not receive so much benefit from it as it would from the opening of Great Pond. But the act would be unauthorized and illegal, and would change the con-

dition of their property. The principal, if not the only, ground upon which the court can properly take jurisdiction in this case is, that there are many parties plaintiff, all of whom as landowners on Great Pond have the same rights, which can be settled in one action in equity, so as to avoid a multiplicity of suits at law. Upon that ground, it seems to be our duty to determine the rights of the parties in this form of proceeding.

We are of opinion that the action of the original defendants in opening Job's Neck Pond, since the modification of the temporary injunction originally granted, does not, under the facts of this case, preclude us from enjoining them from opening it again. For while the language of the bill, strictly construed, seems to relate to the single act which cannot now be enjoined because it has been done, the answer and the facts disclosed indicate that, if not enjoined, the commissioners may continue hereafter to exercise their supposed right, as they have done heretofore. They must, therefore, be perpetually enjoined from making an opening and connecting the waters of Job's Neck Pond with the waters of the ocean; but the plaintiffs will take no costs.            *Decree accordingly.*