EDITH A. STEVENS & others *vs.* ROCKPORT GRANITE COMPANY.

Essex.     November 6, 1913. — February 26, 1914.

Present: RUGG, C. J., LORING, BRALEY, & DE COURCY, JJ.

*Equity Jurisdiction,* To enjoin continuing nuisance, Damages. *Equity Pleading and Practice,* Decree, Misjoinder of parties, Master's report, Costs.

Where in a village adjacent to the sea near valuable stone quarries there have coexisted for a period of many years an extensive granite business and a settlement of summer residents, and in the development of the granite business the use has become necessary of surfacing machines, which produce a loud, penetrating and disagreeable noise that interferes with the reasonable comfort and enjoyment of life of the occupants of the summer residences when windows and doors are kept open, and where it is possible that by the adoption of certain devices the amount of the noise from the operation of the machines may be diminished without an excessive expenditure of money, an injunction may be granted; in a suit in equity brought by some of the summer residents, restraining the corporation conducting the granite business there from operating the surfacing machines "in such an unreasonable manner as to interfere with the reasonable comfort of, and enjoyment of life by, the plaintiffs."

In a suit in equity to enjoin a continuing nuisance, a final decree that restrains the defendant from carrying on a certain business in an unreasonable manner also may award damages for injury already done.

In a suit in equity by a number of plaintiffs to enjoin a continuing nuisance, where the plaintiffs also seek damages for the injury already done, if the defendant wishes to raise the objection that the plaintiffs cannot maintain the suit jointly and that damages cannot be assessed in favor of the different plaintiffs whose injuries are several, he should demur for this cause to the part of the bill relating to damages, and certainly, after he has failed to raise this objection by exceptions to the master's report, it is not open to him.

Where a master in a suit in equity reports all the evidence, he is required to state in his report only such facts as are material, in his view of the case, to the findings made and the conclusions reached by him.

Where a master in a suit in equity states in his report that he has made "a finding with respect to every fact as to which either party requested a finding, so far as the belief in the evidence justified a finding," an exception to a refusal of the master to report additional facts must be overruled; especially where, as in the present case, no harm can have been done to the excepting party by the refusal, because the facts that the master refused to report can be inferred from the facts found by him or from those disclosed by the evidence reported.

A final decree in a suit in equity which orders the payment of costs to one of the parties should state the amount of such costs so that nothing remains to be determined in order to fix all the rights of the parties involved in the decision, but a decree, otherwise correct, will not be reversed on account of a failure to name the amount of the costs, this being merely a defect of form.

RUGG, C. J. The plaintiffs are owners of abutting estates on the seashore of the village of Bay View in Gloucester, which are used only for residence in the summer. The defendant operates several granite quarries and has a finishing plant of considerable extent near the plaintiffs' property. It is the chief industry of the village. It was established about 1866, and the plaintiffs' estates were occupied at approximately the same time by one of the defendant's predecessors in title. The case was heard by a master.* The substance of his findings is that, beginning with 1902, the defendant has installed from time to time surfacing machines, so that at the time this suit was brought seven were in operation. These machines, in the process of development of the granite industry, have become necessary for the successful prosecution of the defendant's business. They are operated by compressed air and produce "a loud, penetrating, confused and disagreeable noise, which cannot be analyzed. The amount, intensity and penetration of this noise varies about in ratio with the number of machines running at a given time, and increases in its effect with the length of time of the continuous runs. This noise interferes with the reasonable comfort and enjoyment of life" in the respective houses of the plaintiffs "and would so interfere with that of normal persons generally, during those portions of the year when windows and doors are kept open." This noise is different in kind and amount from any produced by the conduct of the defendant's business previous to their use. It would involve a large expense to move the defendant's plant to any other location and there is none in the vicinity to which it conveniently can be moved. These machines produce considerable dust offensive and dangerous to the health of workmen. For this reason the machines are operated out of doors. The master further finds that "no serious consideration has been given by the defendant to devising a method of overcoming or diminishing the noise, and no suggestion of such a method has been made by the plaintiffs or any one in their behalf, except that it has been suggested that a

---

* The case was a bill in equity, filed in the Supreme Judicial Court on March 24, 1911, to enjoin a continuing nuisance. The master was Edward F. McClennen, Esquire.

high fence be constructed between the location of the surfacing machines and the house of the plaintiff Stevens." A fence adequate to make a considerable reduction in the noise would cost not over $1,000. A device for blowing away the dust caused by the machines is in existence, but its practicability was not shown by the evidence. It did not appear whether by its use the machines could be operated under cover, thereby diffusing less noise in the neighborhood, but no experiments or investigation seem to have been made to this end.

A final decree was entered by a single justice* declaring that the defendant was creating a nuisance by the operation of its surfacing machines, and restraining it from operating these machines "in such an unreasonable manner as to interfere with the reasonable comfort of, and enjoyment of life by, the plaintiffs" or other persons of ordinary sensibilities occupying their houses. The defendant appealed.

The law of nuisance affords no rigid rule to be applied in all instances. It is elastic. It undertakes to require only that which is fair and reasonable under all the circumstances. In a commonwealth like this, which depends for its material prosperity so largely on the continued growth and enlargement of manufacturing of diverse varieties, "extreme rights" cannot be enforced. One who settles in a district, which possesses natural resources of a special kind, cannot prohibit the development of those resources merely because it may interfere in some degree with personal satisfaction or æsthetic enjoyment. No one can move into a quarter given over to foundries and boiler shops and demand the quiet of a farm. On the other hand, the noisy or noisome factory cannot with immunity invade territory stamped by use for residence. The test whether a nuisance exists through noise in any case depends upon all the attendant conditions. It is not open to doubt that noise alone may constitute a nuisance. That which is proper in one place might be highly objectionable in another. That which well might be enjoined in one region would be innocuous in another. That which would be permitted at one hour or season might be restrained at another. In order that a noise may amount to a nuisance, it must be harm-

---

* *Braley*, J.

ful to the health or comfort of ordinary people.  It is not enough that a person of peculiar temperament, unusual sensibilities or weakened physical condition, may be affected.   Nor is a noise protected if persons of exceptional strength and robustness, or whose faculties have become benumbed by close business or other experience with it, are not disturbed.   The pertinent inquiry is whether the noise materially interferes with the physical comfort of existence, not according to exceptionally refined, uncommon, or luxurious habits of living, but according to the simple tastes and unaffected notions generally prevailing among plain people.  The standard is what ordinary people, acting reasonably, have a right to demand in the way of health and comfort under all the circumstances.   The number of people concerned by the noise and the magnitude of the industry complained of are both elements entitled to consideration in reaching a conclusion as to the fact.   *Wesson* v. *Washburn Iron Co.* 13 Allen, 95.   *Davis* v. *Sawyer,* 133 Mass. 289.   *Rogers* v. *Elliott,* 146 Mass. 349.   *Shepard* v. *Hill,* 151 Mass. 540.   *Boston Ferrule Co.* v. *Hills,* 159 Mass. 147.   *Wade* v. *Miller,* 188 Mass. 6.   *St. Helen's Smelting Co.* v. *Tipping,* 11 H. L. Cas. 642.   *Rushmer* v. *Polsue & Alfieri, Ltd.,* [1906] 1 Ch. 234; *Polsue & Alfieri, Ltd.,* v. *Rushmer* [1907] A C. 121.   *Walter* v. *Selfe,* 4 De G. & S. 315, 322.   *Sturges* v. *Bridgman,* 11 Ch. D. 852.   *Crump* v. *Lambert,* L. R. 3 Eq. 409. *Baltimore & Potomac Railroad* v. *Fifth Baptist Church,* 108 U. S. 317. *Adams* v. *Ursell,* [1913] 1 Ch. 269.   *Collins* v. *Wayne Iron Works,* 227 Penn. St. 326.   *Gilbert* v. *Showerman,* 23 Mich. 448.   *Dittman* v. *Repp,* 50 Md. 516, 522.   *Norcross* v. *Thoms,* 51 Maine, 503.

The neighborhood in question is of a mixed character.  It is adjacent to the sea, with inlets upon a somewhat bold and rocky shore.  On this account it has become increasingly attractive for summer residence.  The plaintiffs and others near by, and more at a greater distance, have estates for this purpose.  Nature also has planted valuable stone quarries in the vicinity, which have been opened and worked, and are useful not only to their owners but also in centres of population where they give beauty and strength to public buildings.  This circumstance renders apposite the words of James, L. J., in *Salvin* v. *North Brancepeth Coal Co.* L. R. 9 Ch. 705, at 709, "If some picturesque haven opens its arms to invite the commerce of the world, it is not for this court to

forbid the embrace, although the fruit of it should be the sights, and sounds, and smells of a common seaport and shipbuilding town, which would drive the Dryads and their masters from their ancient solitudes." Both these uses, commencing about the same time, have grown together in the same village. It cannot be said upon the evidence or upon the findings of the master that either has become so dominant as to impress its special character upon the community. The village is not given over exclusively to the granite industry, nor has the summer resident so over-whelmed it as to have become its distinctive feature. Therefore, each must yield something to the presence of the other. The plaintiffs cannot demand the quiet of a remote cove far distant from any industry. The defendant cannot insist upon conducting its business in disregard of those who seek some degree of rest and refreshment by the ocean side. The standard of comfort for the one is affected by the reasonable business needs of the other, and the same is true conversely.

It cannot be said that the finding of the master is unsupported by the evidence. Whether a nuisance exists is usually a question of fact. It is apparent that in determining such a question of fact as is presented on this record, the actual hearing of the noises made by the machines (as the master did at his view) was a most important factor in reaching a conclusion. This cannot be transcribed and presented in the record. Obviously the power to describe it depends in some degree upon the imagination and versatility of the witness. The weight to be attributed to the testimony of individuals, and the decision whether the plaintiffs and their visitors were ordinary people manifestly depended upon observation of them. We should hesitate to reverse a conclusion of the trial magistrate under these circumstances. The familiar rule as to the effect to be given to findings by a master is that, where they rest upon conflicting oral testimony and upon observations made at a view, and have been affirmed by the court, they have every reasonable presumption in their favor. They will not be disturbed unless clearly erroneous. *Willets* v. *Langhaar*, 212 Mass. 573, and cases cited at 576. *Stewart* v. *Hanreddy*, 212 Mass. 340. A careful reading of the entire evidence fails to demonstrate that the master was mistaken or in error in finding the facts set out in the report, or to convince us that the opposite result ought to

have been reached. It is not necessary to narrate or analyze it in detail. Perhaps a larger number of witnesses testified in such a way as to indicate that the noise did not impair their comfort. But this is not decisive.

The conclusions of the master find ample support in the testimony of witnesses who must have been found by him to have been reasonably accurate in their observations and truthful in their statements. The description given by him of the nature of the noises and their effect upon the comfort of normal persons is enough to constitute a nuisance. This noise is comparatively new in the business of the defendant. It was not contemporaneous with its establishment, nor did it appear until many years afterward, in 1902, when the first two machines were installed. No complaint was made until 1907, when two more machines were added to the defendant's equipment, which with one in 1903 increased the number to five. This augmentation of the volume of sound may have crossed the line between that which is reasonable and unreasonable, measured by its effect upon the comfort of life. A noise produced by the striking of steel upon stone by seven machines (the number in 1910) driven pneumatically at high speed in a partially residential neighborhood, and so constantly strident as to make impossible natural conversation, and so harsh and grating as to prevent concentration of mind unless impelled by absorbing duties, may be found to be a nuisance. Such a conclusion cannot be pronounced to be unwarranted or wrong upon the reported evidence. It is impossible to say upon the whole record that the noise of the increased number of machines operated in 1907 was not substantially greater and different in kind from that emanating from the yard of the defendant before that time. Hence the inference cannot be drawn that the plaintiffs are seeking to establish and maintain a higher degree of quiet than that to which the village had been given over.

The final decree granting an injunction was right upon the facts found. The propriety of granting an injunction depends upon whether the other remedy by way of damages will be adequate. The injury in this case would be recurring constantly. It is an invasion of the right to comfortable living. Its nature is such that money damages would not be adequate relief. More-

over, only in this way can multiplicity of suits be avoided. Equity looks to the future, preventing continuance of damage and affording appropriate relief in one suit. *Smith* v. *Smith,* 148 Mass. 1. *Childs* v. *Boston & Maine Railroad,* 213 Mass. 91.

The limited form of the decree in restraining the defendant only from operating the machines "in such an unreasonable manner as to interfere with the reasonable comfort of, and enjoyment of life by, the plaintiffs" was right. The defendant may be able to cut off the noise from reaching the houses of the plaintiffs in offensive volume either by a fence or by such dust-blowing devices as will enable the machines to be placed under cover, or by some other means. Such measures are indicated as possible by some of the evidence and by one of the findings of the master. Moreover, it appears that the defendant never has undertaken seriously to diminish the noise. The issue is not squarely presented between wiping out the defendant's industry at this place or refusing injunctive relief. That would be a different and more difficult question.

The finding of the master that the noises do not interfere with the reasonable comfort of anybody except when the doors and windows are kept open, nor of persons occupied within buildings or houses and in absorbing duties even during that season, nor of those subjected to it but a short time, coupled with the general character of the community, support the conclusion that the injunction ought not to be any more extensive or drastic. Even if it be assumed in favor of the plaintiffs that they have a right to question the form of the decree, not having appealed from it, see *Masters* v. *Wayne Automobile Co.* 198 Mass. 25, *Lyons* v. *Elston,* 211 Mass. 478, 482, plainly it ought not to be changed by striking out the word "unreasonable" as applied to the operation of the machines. The decree as drawn rightly indicates that some concession to the necessities of the defendant as to noise must be made by the plaintiffs, and some concession to the plaintiffs' comfort by the defendant. It is a correct representation of the composite character of the community where the estates of the several parties are, and the correlative rights each has growing out of that location. Whatever harm may come to the defendant by reason of an injunction of this sort is inevitable from the nature of the wrong committed by it. *Parker* v. *Amer-*

*ican Woolen Co.* 195 Mass. 591. *Curtis Manuf. Co.* v. *Spencer Wire Co.* 203 Mass. 448. *Kershishian* v. *Johnson,* 210 Mass. 135. *Szathmary* v. *Boston & Albany Railroad,* 214 Mass. 42.

No error is disclosed in the damages found. The master saw the houses of the plaintiffs and heard testimony as to their occupation and the effect produced by the defendant. These were facts enough to enable him to use his own judgment as to the injury to their valuable use and to the comfort of the plaintiffs. It was the same problem in substance commonly presented to juries and courts. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 8. *C. W. Hunt Co.* v. *Boston Elevated Railway,* 199 Mass. 220. There is no foundation in the evidence for the contention that the damages are excessive. They fall far short of being shown to be wrong. It hardly can be contended that money damages may not be awarded in a suit in equity for the abatement of a nuisance. *Cobb* v. *Massachusetts Chemical Co.* 179 Mass. 423.

It is too late for the defendant to raise at this stage the objection that the plaintiffs cannot join in a suit of this sort and that damages cannot be assessed in favor of different plaintiffs whose injuries are several. The proper way to take advantage of misjoinder is by demurrer for that cause. At the least, seasonable objection upon the ground of separate assessments of damages should have been taken before the master and exceptions filed duly. Failure to do this precludes the defendant from asking the court to consider this question. *Huntress* v. *Hanley,* 195 Mass. 236. *Smedley* v. *Johnson,* 196 Mass. 316. Even if this point had been raised betimes, it is open to doubt whether it could be sustained. *Ballou* v. *Hopkinton,* 4 Gray, 324. *Parker* v. *Nightingale,* 6 Allen, 341. *Cadigan* v. *Brown,* 120 Mass. 493.

The defendant has suffered no harm by the refusal of the master to report additional facts. So far as such refusals have been argued, they relate either to matters fairly inferable from other facts found or from the general conditions. The evidence being all reported, the master is required to embody in his report only such facts as are material in his view of the case to the findings made and the conclusions reached. Moreover, the master states expressly that he has made "a finding with respect to every fact as to which either party requested a finding, so far as the belief in

the evidence justified a finding." This is all the defendant could ask for and alone is sufficient ground for overruling this exception. However, the evidence has been carefully examined in this regard as well as in all others, and no error is shown.

The defendant's other exceptions to the master's report must be overruled. It was not necessary that he should restate the pleadings in full. This is not required by anything in *Ginn* v. *Almy,* 212 Mass. 486, 501. It may be desirable sometimes for a master to state the issues actually tried before him. But that point is not presented here. The general motion to recommit the case to the master was addressed to the discretion of the court. *Henderson* v. *Foster,* 182 Mass. 447. There is nothing to indicate that this discretion was not exercised wisely. The refusal of the master to hear the evidence offered at the second reference was not error. It was not within the terms of the reference. But even if received and given full weight it would afford no ground for reversal of the decree.

The last paragraph of the final decree omits to state the amount of the costs, but simply provides that "the defendant shall pay to the plaintiffs their costs." This was wrong in form. The amount of the costs should have been stated in the decree, although a decree will not be reversed on this account. *East Tennessee Land Co.* v. *Leeson,* 185 Mass. 4. As was said by Gray, C. J., in *Forbes* v. *Tuckerman,* 115 Mass. 115, at 119, "No decree is a final one, which leaves anything open to be decided by the court." Unless the costs are stated in the decree, something remains to be done in order finally to fix all the rights of the parties involved in the decision.

*Decree affirmed with costs.*

*F. H. Stewart,* (*F. H. Tarr* with him,) for the defendant.
*W. G. Thompson,* (*G. E. Mears* with him,) for the plaintiffs.