CUMBERLAND CORPORATION & another *vs.* NICHOLAS METROPOULOS.

NICHOLAS METROPOULOS *vs.* WARREN MACPHERSON.

Middlesex.    November 9, 1921. — June 15, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Nuisance. Equity Jurisdiction,* To enjoin maintenance of nuisance, To enjoin continuing trespass, Damages. *Equity Pleading and Practice,* Master: inferences from facts in report contrary to master's conclusions; Appeal. *Evidence,* Matter of common knowledge.

A suit in equity to enjoin the proprietor of a factory adjoining land occupied by the plaintiff and his tenants from carrying on the factory in a way alleged to amount to a nuisance to the plaintiff may be maintained if the plaintiff shows injury or annoyance of a real and substantial nature, namely, acts or conduct of the defendant such as materially interfere with the ordinary comfort of human existence or are materially detrimental to the reasonable use or value of the plaintiff's property.

In a suit in equity in the Superior Court of the nature above described, a master found that the defendant under ordinary conditions employed in a new and enlarged factory between three hundred and four hundred persons, and that the occupants of two brick buildings on the plaintiff's land were the only persons residing in the general vicinity who in any way could be affected or inconvenienced by acts of the defendant objected to; that the operation of a machine in the factory produced a "low-toned, heavy grinding noise incident to the meshing of the heavy gears;" that, in various parts of the plaintiff's house on the front part of his lot, it was possible to observe a slight vibration of the floor; that this was more distinct in some places in the house than others, and in one room the window frame rattled slightly. The master further stated

that, in his opinion, the noise and vibration from the operation of the machine did not constitute a nuisance, but that the plaintiff's premises would undoubtedly be a more desirable place in which to live if the noise and vibration were eliminated. He also found that at times there was a distinct odor of naphtha and rubber proceeding from the defendant's factory, distinguishable either in the plaintiff's yard or houses if windows of both factory and houses were open, and that he was unable to determine the frequency and extent to which the odors were or had been perceptible to the occupants of the plaintiff's houses; that, if the windows in the factory were closed at all times, the noise from the operation of the defendant's machinery and odors resulting from the conduct of his business would be less perceptible on the plaintiff's property; that the defendant's factory could be run with the windows closed if a ventilating system were installed; that there was nothing detrimental to the health of the plaintiff or the members of his family or the occupants of his various tenements in the noise, vibration or odors and that, neither alone nor in combination, were they of such a character as to cause material discomfort to any ordinary person of that class who would be likely to seek a home or residence in that general locality; that the plaintiff had suffered no material damage from the acts complained of, had lost no tenants, and had raised the rent of each and all of the tenants several times since the defendant's new factory building was erected; and that, taking into account the magnitude of the industry carried on by the defendant and the number of persons affected or inconvenienced by the operation of the defendant's plant, a requirement that the defendant should make any radical changes in the method of operation would entail an expenditure by the defendant which would be disproportionate to the advantages to be derived by the plaintiff and those occupying his premises from such change. Decrees were entered confirming the report and dismissing the bill. The plaintiff appealed. *Held,* that

(1) The master's finding that neither the odors nor the vibrations singly or in combination were "of such a character as to cause material discomfort to any ordinary person of that class who would be likely to seek a home or residence in that general locality," was not equivalent to a finding that persons of normal sensibilities and ordinary tastes and habits of living would be unaffected;

(2) In order to amount to a nuisance, it was not necessary that the corruption of the atmosphere should be such as to be dangerous to health; it was sufficient that the effluvia were offensive to the senses and rendered habitation uncomfortable;

(3) The plaintiff was under no obligation to submit to the constant annoyance and discomfort of odors of naphtha and rubber which could be either eliminated or greatly mitigated by the installation by the defendant of some other means of ventilation;

(4) The question of disproportionate expense was not conclusive: the plaintiff's premises without his consent could not be subjected to the defendant's use for ventilation of his new and enlarged factory because another mode of obtaining fresh air might be more costly to the defendant;

(5) It was common knowledge that such oscillation as that described as produced by the machinery of the defendant, if sufficiently permanent, would have a tendency to bring on structural changes in the plaintiff's brick buildings resulting in slow but sure disintegration and decay;

(6) The continuous jarring with the accompanying "low-toned, heavy grind-ing noise incident to the meshing of the heavy gears," as well as the emission of odors in the manner described, entitled the plaintiff to equitable relief.

This court, upon an appeal in a suit in equity from a final decree founded upon facts found by a master, without a report of evidence, upon oral and docu-mentary evidence and a view and upon his inferences and conclusions from such facts, is not bound by inferences and conclusions either of the master or of the court entering the decrees, but may draw from the subsidiary facts found by the master inferences and conclusions different from those of the master and of the court entering the decree which will lead to a reversal of the decree.

The defendant in the suit above described occupied leased land. The plaintiff, to protect his property from the detrimental effects above described, erected a framework of posts, stringers and boards, which he unintentionally main-tained on land of the defendant's lessor, who, with the defendant, brought against him a suit to enjoin the continuance of the trespass and for damages. A master found that the maintenance of the barrier from October 8 to Octo-ber 25 so cut off natural light essential to the proper performance of a large contract then in process in the factory that many rejections occurred, result-ing in loss. He ruled that the elements of damage were the additional expense to which the defendant was thus subjected and the actual loss sustained from damaged cuts of cloth or imperfect material, and assessed in his favor damages for extra help required to produce material in accordance with the contract requirements, and the actual loss on rejected material and on defective rem-nants; and allowed the lessor nominal damages. The court made a decree in accordance with the master's ruling and assessment. *Held*, that the ruling and method of assessment were correct.

BILL IN EQUITY, filed in the Superior Court on October 14, 1920, by the Cumberland Corporation, the registered owner in fee of certain land and buildings situated on the southerly side of Main Street and extending westerly to Windsor Street and southerly to State Street in Cambridge, and Warren MacPherson, doing business as the Cambridge Rubber Company, lessee of the premises of the Cumberland Corporation, which he used for the manufacture of rubberized cloth and other articles of which rubber is a component part, against Nicholas Metropoulos, the owner in fee of land with tenement buildings thereon, which also fronts on Main Street and which, except for the frontage on Main Street, is surrounded by the land of the corporation. The plaintiffs sought to enjoin the defendant from trespassing on the land of the corporation and for damages caused by certain obstructions erected by Metropoulos on the land of the corpora-tion; also a

BILL IN EQUITY, filed in the Superior Court on November 9,

1920, by the defendant in the first suit against Warren MacPherson, a plaintiff in the first suit, to enjoin an alleged nuisance consisting of noise, vibration, bad odors, and dust caused by the operation of certain machines placed on the ground floor of a factory building, erected on the premises adjoining the plaintiffs on the easterly side, and by the process of manufacture as carried on there by the defendant, and for the assessment of damages.

The suits were referred to and were heard together by a master. Material findings of the master are described in the opinion.

In the first suit, Metropoulos filed exceptions to the master's report, based on the following objections:

"1. Because the amount of damage found by the master is excessive.

"2. Because the facts as found by the master do not sustain the finding that the closing of the windows of the plaintiff's factory caused the damage awarded by the master.

"3. Because the master errs in ruling that it is immaterial whether the damages sustained could have been counteracted by additional precautions used in other parts of the factory or not.

"4. Because the facts found by the master do not sustain his finding that the loss and damage suffered by the plaintiff was due to any illegal act of the defendant.

"5. Because it is based upon a finding that the obstructions erected by the defendant effectively cut off all natural light from the calender room with the exception of that which entered from the window on Main Street, whereas the master finds as a fact that there were eight windows on the westerly wall of this room and that the obstructions were placed against only four of these windows.

"6. Because it is based upon a finding that all natural light was shut off from the calender room by boards and signs erected by the defendant, whereas the master finds as a fact that the boards and signs in front of the windows were erected in part upon the defendant's own land.

"7. Because it is based upon a finding that during the period from October 9 to October 16 the production of coats fell from eleven hundred and fifty to two hundred and twenty-five, whereas the master finds as a fact that only six hundred and ninety coats were produced between October 2 and October 10, four hundred

between September 25 and October 2, one hundred and twenty-five between September 11 and September 25, and none before that date.

"8. Because he awards as damages the full value of two thousand yards of defected material i. e. $960, and also the full loss on five hundred and twenty-two coats rejected i. e. $1,994.04, whereas he finds as a fact that said two thousand yards of defected material formed a part of each of the five hundred and twenty-two coats rejected, and that the award includes damages for one item twice.

"9. Because the master has awarded as damages the cost of repairing coats which were rejected by reason of defective matching of collars, pocket flaps, etc., whereas he finds as a fact that the work of manufacturing coats when collars, flaps, etc., were attached to coats was carried on in part of the factory where there was ample natural light.

"10. Because it is based upon the finding that the damage suffered by the plaintiff was the natural and reasonable result of the conduct of the defendant, whereas it appears from the facts found by the master that it was not.

"11. Because it is based upon a finding that the plaintiff did all that could reasonably be done to minimize its damages, whereas it appears from the facts found by the master that he did not."

In the second suit, Metropoulos filed exceptions to the master's report, based on the following objections:

"1. Because [the report] is based upon a finding that the heavy grinding noise incident to the meshing of the heavy gears of the defendant's machine with a deep roar or rumble, and the vibration of the earth which shook the premises of the plaintiff, and the distinct odor of naphtha and rubber which proceeds from the defendant's premises does not constitute a nuisance.

"2. Because it is based upon a finding that the noise, vibration and odors proceeding from the defendant's premises are not of such a character as to cause material discomfort to any ordinary person of that class who would be likely to seek a home or residence in that general locality.

"3. Because it is based upon a finding that the odors which come from the defendant's factory are no different from those produced at the time that the plaintiff purchased his prem-

ises, whereas, the master finds that the plaintiff purchased his property March 3, 1916, at which time there was no building upon the premises adjoining the easterly line thereof, and that two years ago there was erected on this part of the defendant's land a two-story building the windows of which adjoin the plaintiff's land and are used for the purpose of ventilating the defendant's factory out on to and over the plaintiff's land.

"4. Because it is based upon the fact that no evidence was offered concerning the expense of installing a ventilating system in the defendant's factory, nor as to what the effort of such a system would have as to preventing odors from being noticeable on the plaintiff's premises.

"5. Because it is based upon the fact that no evidence was offered as to the practicability of running the large heavy gears of the machine in an oil bath.

"6. Because it is based upon the fact that the occupants of the two buildings located on the plaintiff's premises are the only persons who could be in any way affected or inconvenienced by the acts of the defendant.

"7. Because it is based upon the finding that the plaintiff has raised the rent of each and all of his tenants several times since the new factory building was erected.

"8. Because the facts found by the master do not sustain his finding that the noise, odor and vibration described by the master in his report do not constitute a nuisance."

The suits were heard upon the pleadings and the master's reports by *Wait*, J., by whose order there were entered in both suits interlocutory decrees overruling the exceptions of Metropoulos to the master's report and confirming the reports; in the first suit a final decree perpetually restraining and enjoining Metropoulos from entering and trespassing upon the land of the Cumberland Corporation and directing him to pay MacPherson as damages the sum of $3,828.09 with costs, and in the second suit a final decree dismissing the bill. Metropoulos appealed from all the decrees.

The cases were submitted on briefs.

*F. S. Deitrick*, for Metropoulos.

*R. A. Stewart & L. Kofsky*, for the Cumberland Corporation and MacPherson.

BRALEY, J.  These cases are here on the appeal of Metropoulos from interlocutory decrees overruling his exceptions to the master's report in each case, and the final decree in the second case dismissing the bill, and the final decree awarding damages to the plaintiffs in the first case.

The Cumberland Corporation owns registered land with buildings thereon equipped with machinery which is leased to MacPherson as the sole proprietor who uses the premises for the manufacture of rubberized cloth, and other products containing rubber as an essential ingredient.  The adjoining land on the west with two brick dwelling houses consisting of five tenements is owned in fee by Metropoulos who with his family occupies one of the apartments; the other apartments are rented to tenants.  When he acquired title, a portion only of the premises leased to Mac-. Pherson had for many years been used by different proprietors as a factory, and for more than ten years preceding the suit a considerable part had been operated for the manufacture of rubber goods.  But there was no building on the corporation's property which is contiguous to the easterly line of the plaintiff's land.  A two-story factory building was built on this part of the land about two years before litigation began.  The westerly wall was laid approximately four inches back from the division line between the estates at its intersection with Main Street, and approximately one and one half inches from the division line at the rear of Metropoulos's lot.  This building a year later was enlarged by the addition of two stories, and several heavy machines were installed on the ground floor, which were used in manufacturing rubber goods and rubberized cloth, while the upper stories were occupied as sewing and cutting rooms for the manufacture of raincoats and similar articles.  The westerly wall is pierced by thirty-two windows with movable sections, so pivoted that when opened outward the sash can be tilted to a certain extent for the admission of fresh air and for ventilation. The material allegations in the second suit in substance are that the calender machine, dusting machine, and washing machine, and the warming mill referred to in the report as located on the first or ground floor of the new building, produce when in operation a loud, insistent pounding and jarring noise so great in volume and so continuous during the day and oftentimes when

operated at night as to be heard throughout the various apartments of the plaintiff's houses, and so offensive as to render the premises unsuitable for habitation by persons of ordinary sensibilities and greatly diminishes the value of his property. It is further alleged that the calender machine "is so placed upon its foundation and operates with such force and power that it shakes the . . . ground and buildings of the plaintiff and causes the same to vibrate in a manner which is unpleasant and detrimental to health." The defendant is also charged with wrongfully permitting foul and noisome odors to emanate from the factory during operation and to be disseminated "into the said residences . . . whereby the air therein is polluted and poisoned which materially lessens the comfort of the occupants and impairs their health and renders the said premises exceedingly undesirable if not unfit for human occupation." And that the noise and foul air have caused members of the plaintiff's family to become ill whereby he has been subjected "to great expense for medicine, medical attendance and nursing." It is plain that a case is stated of a private nuisance maintained by the defendant. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 488, 489, and cases there collected.

At the request of the parties the master took a view, and from "the oral and documentary evidence, and the view" he states "that there is no noise or vibration which comes from the operation of the calender machine that is perceptible on any part of the complainant's premises, and that no odor or dust results from the operation of this machine. The dusting machine is enclosed and no noise, vibration, dust or odor comes from the operation of this machine that is perceptible on the complainant's premises," and "that there was [n]ever any noise, vibration, dust or odor which came from this machine in sufficient volume to be detrimental to the health, comfort or enjoyment of the complainant or the members of his family or the tenants of his building." A warming mill the functions of which appear in the report is an essential part of the operating machinery. The master when referring to the operating machinery, the odor from the premises, and the effect upon the plaintiff's property, and his enjoyment of it, sets forth his findings and rulings as follows:

"The operation of the warming mill produces a low-toned, heavy grinding noise incident to the meshing of the heavy gears. There is none of the clatter and rattle which accompanies the operation of swift moving machinery, nor is there any pounding, squeaking or other sharp penetrating sound. It is more like a deep roar or rumble. No odor or dust comes from the operation of this machine. The work which the machine has to perform is laborious. No evidence was offered from an engineering standpoint as to how the operation of this machine could be changed. It is essential that the machine be located as it now is, close to the calender machine. The expense of removing these two machines to some other part of the plant would be enormous, probably something like $14,000, and would be out of all proportion to the needs of the case.

"If one stands within a few feet of the warming mill, a very slight vibration of the ground is perceptible. None whatever is distinguishable on the sidewalk in front of the building on Main Street. If the proper spot be carefully selected in the yard of the plaintiff, adjoining the defendant's premises, it is possible to perceive, if one is looking for it, a slight vibration of the earth. So also, in various parts of the plaintiff's house on the front part of his lot, it is possible to observe a slight vibration of the floor. This is more distinct in some places in the house than others, and in one room into which I entered the window frame rattled slightly. The tremor or vibration is somewhat more pronounced in the house than it is in the yard. The noise from the operation of this machine can hardly be distinguished when one is on the sidewalk on Main Street, directly in front of the building. With the windows of the calender room partly open, the noise can be distinguished in the yard as a low, deep rumble or roar, but not sufficiently loud to affect ordinary conversation. It is nowhere near as loud as the noise made by the passing of a heavy electric car along Main Street in front of the premises. The noise from the operation of this machine is more noticeable in the house on the front part of the plaintiff's premises than it is elsewhere, provided the windows are open.

"Whether it would be practicable to run these large heavy gears in an oil bath and eliminate all, or substantially all, of the low rumbling sound which now proceeds from the operation of

this machine, I have no means of determining in the absence of expert testimony on this point. I make the suggestion for the consideration of the defendant for whatever it may be worth.

"The noise and vibration from the operation of the warming mill do not, in my opinion, constitute a nuisance, but the plaintiff's premises would undoubtedly be a more desirable place in which to live if the noise and vibration were eliminated.

"There was no odor from the defendant's premises that was observable anywhere except within the defendant's building on the day on which I took the view. The oral evidence, however, compels the finding which I make, that at times there is a distinct odor of naphtha and rubber which proceeds from the defendant's premises and is distinguishable by one either in the plaintiff's yard or house if the windows in both the factory and house are open. The presence or absence of this odor on the plaintiff's premises is undoubtedly dependent upon the direction of the wind and whether or not the windows are open.

"At the hearing on my draft report, the plaintiff requested me to find as I now do, that if the windows in the factory were closed at all times, the noise from the operation of the defendant's machinery and the odors resulting from the conduct of his business would be less perceptible on the plaintiff's property; that the defendant's factory could be run with the windows closed if a ventilating system were installed.

"In connection with this finding, I add, that no evidence was introduced concerning the expense of installing a ventilating system, nor what effect such a system would have as to preventing the odors from being noticeable on the plaintiff's premises. The frequency and extent to which these odors are now, and in the past have been, perceptible to the occupants of the plaintiff's houses, I am unable to determine. The plaintiff's family and the occupants of his other tenements during the summer time occasionally closed their windows on account of the odors which came from the defendant's premises on those particular occasions, and at such times the factory windows were open.

"I find that there is nothing detrimental to the health of the plaintiff or the members of his family, or the occupants of his various tenements, in the noise, vibration or odors to which I have referred, nor are they, either alone or in combination, of

such a character as to cause material discomfort to any ordinary person of that class who would be likely to seek a home or residence in that general locality.

"Such noise, vibration and odors as result from the operation of the defendant's factory, are necessarily incidental thereto, unless some scheme can be devised which will deaden the operation of the gears on the warming mill. Such odors as come from the defendant's factory are no different than those produced at the time that the plaintiff purchased his premises. The defendant is now conducting his business in a reasonable and proper manner in view of all of the circumstances disclosed by the evidence in this case.

"The machines heretofore used by the defendant in said factory and in the regular conduct of his business, are the usual kind used in other rubber factories located in the City of Cambridge and elsewhere in this Commonwealth, and in make and design are similar to the machines commonly used in modern rubber factories.

"Under ordinary conditions, the defendant employs between three and four hundred men and women in his plant.

"The occupants of the two buildings located on the plaintiff's premises are the only persons residing in the general vicinity of the defendant's factory who could be in any way affected or inconvenienced by the acts of the defendant set forth in the plaintiff's bill.

"Taking into account the magnitude of the industry carried on by the defendant and the number of persons affected or inconvenienced by the operation of the defendant's plant, I find that to require the defendant to make any radical change in the method of operation would entail an expenditure by him which would be disproportionate to the advantages to be derived by the plaintiff and those occupying his premises, from such change. The plaintiff has suffered no material damage from the acts complained of. He has lost no tenants. He has raised the rent of each and all of the tenants several times since the new factory building was erected."

What amount of annoyance or inconvenience caused by others in the lawful use of their property will constitute a nuisance, is largely a question of degree depending on varying circum-

stances, and is incapable of exact definition. *Wade* v. *Miller,* 188 Mass. 6. *Columbus Gas Light & Coke Co.* v. *Freeland,* 12 Ohio St. 392. The injury or annoyance must be of a real and substantial nature, and the pertinent inquiry ordinarily is whether the acts or conduct proved are such as materially to interfere "with the ordinary comfort, physically, of human existence," or are materially detrimental to the reasonable use, or value of the property. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486. *Stevens* v. *Dedham,* 238 Mass. 487, 488, 489.

The master's finding that neither the odors nor the vibrations singly or in combination are "of such a character as to cause material discomfort to any ordinary person of that class who would be likely to seek a home or residence in that general locality," is not equivalent to a finding that persons of normal sensibilities and ordinary tastes and habits of living would be unaffected. "In order to amount to a nuisance, it is not necessary that the corruption of the atmosphere should be such as to be dangerous to health; it is sufficient that the effluvia are offensive to the senses, and render habitations uncomfortable. *Rex* v. *White,* 1 Burr. 333. *Rex* v. *Cross* and *Rex* v. *Neil,* 2 Car. & P. 483, 485." *Eames* v. *New England Worsted Co.* 11 Met. 570, 572. The standard was not what the effect of such conditions would be on those whose tastes or conditions of existence are such that they may be by habit oblivious of any annoyance from odor or noise of every description. *Davis* v. *Sawyer,* 133 Mass. 289. *Duncan* v. *Hayes,* 7 C. E. Green, 25. *Stadler* v. *Grieben,* 61 Wis. 500. *Baltimore & Potomac Railroad* v. *Fifth Baptist Church,* 108 U. S. 317.

While the question whether a nuisance existed was one of fact, *Stevens* v. *Rockport Granite Co.,* supra, we are empowered to draw inferences of fact from the facts reported. *Danforth* v. *Chandler,* 237 Mass. 518, and cases cited. And to determine whether the conclusion, that no nuisance existed is inconsistent with the circumstances or other facts appearing in the report.

The plaintiff is under no obligation to submit to the constant annoyance and discomfort of odors of naphtha and rubber which can be either eliminated or greatly mitigated by the installation of some other means of ventilation. The question of disproportionate expense is not conclusive. The plaintiff's premises

without his consent could not be subjected to the defendant's use for ventilation of his new and enlarged factory, because another mode of obtaining fresh air may be more costly. The operation of the warming mill causes the earth in the immediate vicinity to tremble. The vibration extends to the plaintiff's house where the master observed a slight movement of the floor, and it was "more distinct in some places in the house than others, and in one room . . . the window frame rattled slightly." It is common knowledge and experience that such oscillation if sufficiently permanent would have a tendency to bring on structural changes in the plaintiff's brick buildings resulting in slow but sure disintegration and decay. It is undisputed that the conditions to which we have referred are recurrent, and an action at law for damages would be inadequate. *Stevens* v. *Stevens*, 11 Met. 251. *Szathmary* v. *Boston & Albany Railroad*, 214 Mass. 42. We are satisfied on the record that the continuous jarring with the accompanying "low-toned, heavy grinding noise incident to the meshing of the heavy gears," as well as the emission of odors especially from the windows on the westerly side of the factory, in the manner described entitled the plaintiff to equitable relief. *Wesson* v. *Washburn Iron Co.* 13 Allen, 95. *Stevens* v. *Rockport Granite Co., supra. Stevens* v. *Dedham, supra. Townsend* v. *Norfolk Railway & Light Co.* 105 Va. 22. *Hurlbut* v. *McCone*, 55 Conn. 31. *Duncan* v. *Hayes*, 7 C. E. Green, 25. *Appleby* v. *Erie Tobacco Co.* 22 Ont. L. Rep. 533. *Scott* v. *Firth*, 4 F. & F. 349. The case of *Cremidas* v. *Fenton*, 223 Mass. 249, on the facts there stated is not in conflict.

In the first case the report shows that the framework of posts, stringers and boards which the defendant erected to protect his property from the detrimental effects previously discussed, were unintentionally located and maintained on the land of the corporation. The acts of the defendant although he honestly intended to place the posts and stringers on his own land were unlawful and he was a trespasser. *Congregation Beth Israel* v. *Heller*, 231 Mass. 527, 529, and cases cited. The corporation is found to have suffered nominal damages only, and the decree properly enjoined the defendant from maintaining the barricade and trespassing on its land. *Szathmary* v. *Boston & Albany Railroad*, 214 Mass. 42. It was built sometime between October 8

and October 11, 1920. The defendant was notified on October 11 that he was interfering with MacPherson's business. But they remained until October 25, 1920. During this period of seventeen days the structure is found by reason of boards nailed to the stringers at intervals opposite the windows to have obstructed the light except as it came through two windows on the street side. The master states that just before the acts complained of MacPherson doing business under the name of the Cambridge Rubber Company, had secured a contract from the United States for the manufacture of ten thousand single texture raincoats, and began to make them early in September by a new and unusual process which he developed, using a coloring of light yellow. It is expressly found that notwithstanding the company used ordinary care, the cutting off of light in the manner and during the time referred to not only materially decreased normal production, but also resulted in the rejection by the government of an increased number of garments. If not rightly matched the coats became defective in uniformity of color, and the finding that if there had been no interference by the plaintiff little or no difficulty would have arisen in obtaining the proper shade, should not be disturbed. The master's final conclusion, which appears to be supported by his preceding findings, is, "I find that the reason for the . . . increase in rejections was due to the fact that natural light was shut off . . . and that this absence of natural light made it impossible properly to match the different shades or tints of rubber which entered into the cloth . . . ; that as a consequence goods were produced which were partly of one tint or shade and partly of another, and that they were rejected by the government experts for that reason. The officers of the Cambridge Rubber Company installed nitrogen electric lamps with a view to acquiring, if possible, a pure white light in order to match the different shades or tints, but without success, and it was not until after the barricades had been removed from the windows that they were able to effectively resume manufacture on a quantity basis and eliminate the defects which formed the basis of the complaints and rejections." He correctly ruled that the elements of damage were the additional expense to which Mac-Pherson was thus subjected, and the actual loss sustained from damaged cuts of cloth or imperfect material. *Derry* v. *Flitner,*

118 Mass. 131. *Nelson Theatre Co.* v. *Nelson,* 216 Mass. 30, 35, and cases cited. We perceive no error in the assessment of damages in the amount named for extra help required to match shaded parts, the actual loss on coats rejected, and on defective remnants, or the allowance of nominal damages merely for the encroachment of the defendant's fence.

The evidence is not reported and the exceptions in each case for reasons stated in *Forino Co. Inc.* v. *Karnheim,* 240 Mass. 574, were overruled rightly.

The result is that, the plaintiff's first, second, and eighth exceptions in the second case having become immaterial by reason of the relief herein granted, the interlocutory decrees, and in the first case the final decree, are affirmed with costs of the appeal. But in the second case the final decree is reversed, and a decree for the plaintiff with costs is to be entered in accordance with the opinion, the details of which are to be settled in the trial court. *Stevens* v. *Dedham, supra,* and cases cited. *Appleby* v. *Erie Tobacco Co., supra.*

*Ordered accordingly.*