INHABITANTS OF MANSFIELD *vs.* ATLANTIC CHEMICAL COMPANY.

Bristol.   October 25, 1920. — January 7, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Equity Jurisdiction*, To enjoin nuisance. *Board of Health*, Municipal. *Nuisance*.

A town cannot maintain a suit in equity under R. L. c. 75, § 141, to enforce against a corporation an order of the board of health of the town, issued under R. L. c. 75, § 67, for the abatement of what the board has found to be a "nuisance" existing on premises occupied and run by the corporation and "caused by the discharge of waste material into" a swamp adjacent to its "factory building, resulting in the excessive pollution of the water and causing foul and offensive odors to arise therefrom," where it does not appear that a "source of filth" existed on the premises at any time or that any "cause of sickness" ever had been traced to any gas or odor arising from the swamp.

BILL IN EQUITY, filed in the Superior Court on May 27, 1919, to enforce an order of the board of health of the town of Mansfield.

The suit was referred to a master. Material findings of fact contained in the master's report are described in the opinion. By order of *N. P. Brown*, J., there were entered an interlocutory

decree confirming the report and a final decree dismissing the bill. The plaintiff appealed from the final decree.

*H. F. Wood,* (*F. A. Jenks* with him,) for the plaintiff.

*S. P. Hall,* (*E. R. McCormick* with him,) for the defendant.

DE COURCY, J.   This is a bill in equity, brought under R. L. c. 75, § 141, to enforce an order of the board of health of the town of Mansfield. The following facts appear in the master's report.

The defendant owns a tract of land comprising about four acres. Three acres of this, on which are its buildings, are high ground; the rest is low and wet swamp land. The defendant also has acquired from the owner of an adjoining portion of the swamp the right to let waste water from its premises flow upon and through his land along the line of natural drainage. From this swamp a small natural stream flows into the "Rumford River." Within a short distance from the premises are located a chocolate refinery employing about four hundred persons, a bleachery employing about one hundred persons, a small plant for waterproofing paper and seven dwelling houses.

The defendant is engaged in the manufacture of certain chemical products, principally lactic acid and chrome alum, and employs some fifty persons. Up to August, 1918, the water used in its operations, and discharged into the swamp, contained some acid and a large amount of solid residue consisting of calcium sulphate and the unfermentable portions of organic raw material. As a result certain chemical changes there took place, a foul smelling sediment was deposited, and hydrogen sulphide gas was given off, causing serious discomfort to persons in the neighborhood by its strong and offensive odor. In August, 1918, the chemical company discontinued discharging solid waste directly into the swamp, and until February, 1919, caused the same to be carted to a sludge pile near the southwesterly border of the premises. The odor was thereby somewhat diminished, but continued to be offensive and disagreeable.

In the summer of 1918 the board of health brought to the attention of the State department of health the alleged nuisance on the defendant's premises. After a hearing, the State department on September 17 sent to the defendant a notice under R. L. c. 75, § 109, ordering it to desist from operating its plant. This order was suspended by a notice dated September 24, and no further

orders were made by said department, although the premises were inspected by its officers on February 10, and April 16, 1919. Meanwhile, in February, 1919, the defendant constructed at the southeasterly border of the premises two beds, known as a "sludge bed" and a "lagoon." Into one was discharged the calcium sulphate and into the other the organic waste, the liquid passing through their walls into the swamp. While these were in process of construction, the board of health, without previous notice or hearing, on February 24, 1919, adjudged that a nuisance existed upon the premises of the defendant, and on March 10, served on it the following: "You are hereby notified that by virtue of the authority in us vested, under Chapter 75 of the Revised Laws of this Commonwealth and Acts in Amendment thereof and in addition thereto, the board at a meeting held Feb. 24, 1919, at which all members of the Board were present, it was unanimously voted to view the premises of your Company located in Mansfield aforesaid on the westerly side of the New York, New Haven & Hartford Railroad Company, and now occupied by you in carrying on the manufacture of your products, and in pursuance of said vote, the Board did view the premises, and after due consideration found that a nuisance exists on the premises so occupied or used by your Company, caused by the discharge of waste material into the swamp adjacent to your factory building, resulting in the excessive pollution of the water and causing foul and offensive odors to arise therefrom. You are hereby ordered at your own expense to abate the nuisance on your property within thirty days from the date of the receipt of this notice." It was to enforce this order that the present bill was brought under R. L. c. 75, § 141.

The cause was referred to a master; and after a hearing on his report the Superior Court entered a decree dismissing the bill, with costs. The case is before us on the plaintiff's appeal from this decree.

The notice to the defendant recited that the board of health were acting by virtue of the authority vested in them "under Chapter 75 of the Revised Laws," without specifying under which of the numerous and diversified sections of that comprehensive statute. Although the notice stated that the "nuisance" was due to the discharge of waste material "resulting in the excessive pollution of the water," plainly they were not acting under §§ 112

to 130, inclusive, dealing with the pollution of water supply and its sources. The words "causing foul and offensive odors to arise therefrom" suggests "the noisome and injurious odors" in §§ 91, *et seq.* — dealing with offensive trades. But under these sections provision is made for an appeal from the order of the board to the Superior Court, and a jury trial, as matter of right. See *Taunton* v. *Taylor*, 116 Mass. 254. It seems apparent that they did not proceed under §§ 75, *et seq.*, dealing with wet lands and stagnant water, where also provision is made for a hearing and appeal. See *Watuppa Reservoir* v. *Mackenzie*, 132 Mass. 71. The plaintiff now contends, and we assume, that the order was issued under § 67, which reads: "Said board shall order the owner or occupant of any private premises, at his own expense, to remove any nuisance, source of filth or cause of sickness found thereon, within twenty-four hours, or within such other time as it considers reasonable, after notice; and the owner or occupant shall forfeit not more than twenty dollars for every day during which he knowingly violates such order." It is to be noted that no proceedings were brought to enforce this forfeiture (*Commonwealth* v. *Alden*, 143 Mass. 113); nor did the board cause the alleged nuisance to be removed and action to be brought to recover the expenses incurred thereby, under § 69. See *Salem* v. *Eastern Railroad*, 98 Mass. 431.

R. L. c. 75, § 141, under which the plaintiff has instituted the present suit, provides that the Supreme Judicial Court or the Superior Court "shall have jurisdiction in equity, upon the application of the board of health of a city or town, to enforce the orders of said board relative to the public health," etc. As above stated, the order which the plaintiff seeks to have enforced was issued under § 67 of the statute, which deals with the removal of "any nuisance, source of filth or cause of sickness found" on private premises. Neither in the adjudication of the board, nor in the order issued is there any declaration that a "source of filth" or "cause of sickness" existed on the premises of the defendant. See *Kineen* v. *Lexington Board of Health*, 214 Mass. 587. In fact there is no finding that a "source of filth" existed at any time. And the master expressly reports, "I do not find that any cause of sickness has ever been traced to any gas or odor arising from the swamp, and do not find that the gas or odor at the present

time is technically a 'cause of sickness' or a source of infection or contagion." He does not find that even a "nuisance" exists since the completion of the settling beds, unless it be inferred from the findings that on August 13, when he took a view of the premises, there was "a noticeable odor from the swamp, which was somewhat offensive;" that on October 10, when the plant was not in operation, "there was no odor on the street or at the culvert and only a very slight odor at the edge of the 'lagoon';" and that "there is still under certain weather conditions an appreciable odor from the swamp which is offensive and disagreeable, and is sufficient to cause discomfort to persons passing or being in the vicinity of the swamp."

The plaintiff argues that the words "relative to the public' health," in § 141, should be given a broad and liberal construction. But under any reasonable construction of that language, we cannot say in the light of the facts disclosed by this record, that the trial judge was wrong in refusing to enforce the order in question under the summary provisions of R. L. c. 75, § 141. See *Miller* v. *Horton*, 152 Mass. 540. This conclusion renders it unnecessary to consider the other objections raised by the defendant.

*Decree affirmed with costs.*