WILLIAM J. C. STRACHAN & others *vs.* BEACON OIL COMPANY.

Middlesex.    January 12, 13, 1925. — February 27, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, & PIERCE, JJ.

*Nuisance. Equity Pleading and Practice,* Master's report. *Equity Jurisdiction,* To enjoin nuisance, Damages. *License. Permit.*

Whether a nuisance exists ordinarily is a question of fact. Per CROSBY, J.
In a suit in equity for the enjoining of an alleged nuisance, findings, by a master without a report of the evidence, of facts which show that no nuisance exists must stand if they are not inconsistent with each other.
A master, to whom was referred a suit in equity by one hundred and ninety plaintiffs to enjoin a corporation, engaged in the business of refining and distributing petroleum and its products, from maintaining and operating what the plaintiffs alleged was a nuisance by reason of the causing of the emission of noisome and offensive gases and odors and by

reason of the occurrence of loud and violent explosions and frequent and dangerous fires, found that the gases and odors were not injurious to the life and health of normal persons; that the defendant was not committing the other acts of nuisance alleged and that there had not been any failure on the part of the defendant to comply with the statutes or the conditions of its licenses, and that it had not made any unlawful or improper use of the premises; and it was *held*, that the suit must be dismissed.

An exception in the suit above described to the admission by the master of a letter from the commissioner of public health, which the master admitted only "as having a possible bearing upon the question of the issuance of an injunction" and ruled it to be incompetent for any other purpose, was overruled, as the admission of such evidence did not prejudice the rights of the plaintiff.

If one, who has received a license to "use buildings, machines, and structures for keeping, storage, manufacture, transportation, refining and sale of crude and refined petroleums, oils and products thereof or related thereto," and has been granted by the fire prevention commissioner a permit for the building of a refinery for those purposes, which contains specific and elaborate provisions designed to prevent the occurrence of fires and their spread to the premises of others, complies with all the requirements of the license and the permit, acts done by him thereunder cannot be considered a nuisance or be restrained, even if without the license and the permit, such acts would be a nuisance.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Middlesex, on November 1, 1922, and afterwards amended, seeking to enjoin the defendant from maintaining and operating what the plaintiffs alleged to be a nuisance. The suit was referred to a master. Material findings by the master are described in the opinion. Exceptions by the plaintiff to the report of the master were heard by *Carroll*, J., who ordered the entry of an interlocutory decree overruling the exceptions and confirming the master's report, and of a final decree dismissing the bill; and reported the suit upon the pleadings, the master's report and exceptions thereto for determination by the full court.

*W. R. Bigelow*, for the plaintiffs.

*T. Hunt*, ( *F. E. Jennings* with him,) for the defendant.

CROSBY, J. This is a suit in equity brought by one hundred and ninety plaintiffs alleging that the defendant maintains in the city of Everett a nuisance, by reason of causing the emission of noisome and offensive gases and odors and by reason of the occurrence of loud and violent explosions and frequent and dangerous fires, all of which acts and con-

ditions are alleged to have been done in the conduct of its business. The bill prays for an injunction, and for an assessment of damages alleged to have been sustained by the plaintiffs as the result of the alleged nuisance. The case is reported to this court upon the amended bill, the answer, the report of the master and exceptions thereto. The evidence is not embodied in the record.

The following facts were either admitted by the parties or were found by the master: The defendant, a corporation organized in 1919 under the laws of this Commonwealth, is in the business of refining and distributing petroleum and its products, which include gasoline, kerosene, gas oil, fuel oil, asphalt and road oil. The land upon which its refinery is located comprises about one hundred acres and is occupied under a lease dated January 1, 1920, for a term of fifty years from its date. About sixty acres of the leased land are actually covered by the defendant's plant. Although this district formerly was wholly residential, in recent years it has been increasingly taken over for manufacturing purposes, and there are many other industries located in this section of the city, or in its immediate vicinity. A large portion of the premises occupied by the defendant was originally marsh land which has been filled. The construction of the plant was started in August, 1919, and operations were begun in July, 1920. The defendant has not less than $3,000,000 invested in its plant, and $4,000,000 more in tank steamers and materials used in its business. It employs about six hundred and fifty persons. In 1921 it refined about three million, six hundred thousand barrels of oil and in 1922 about four million, two hundred thousand barrels. The site of the plant is peculiarly fitted for the conduct of such a business and no other location equally well adapted for it was found upon a thorough investigation between New York City and Portsmouth, New Hampshire. All the buildings are of the most approved fireproof construction and all the containers of oil and agitating mixtures of the products are of steel.

The heating of crude oil causes the release of gases which, if they escape into the atmosphere, result in much odor. For

the removal and consumption of such gases, a vacuum system has been installed, and other systems and devices have also been adopted. The master found that the measures taken and devices installed by the defendant for minimizing and controlling the odors were more extensive and efficient than those generally used by oil refiners, and that the defendant has spent not less than $200,000 for that purpose. It also appears that it is impossible to operate a crude oil refinery without some odors, leaks, breaks in pipes, or without at times the emission of black smoke from the stack leading from the boiler fires; that from time to time breaks have occurred in the pipes and odors have arisen by reason thereof; that such breaks mainly have been caused by the settling of the pipes which were laid several feet underground, as required by the permit issued to the defendant by the department of public safety; that such requirement was made against the protest of the defendant, based upon the contention that there would be much less danger of breaks in the pipes if properly laid on the surface than when buried in the ground which is liable to settle unevenly.

On June 23, 1919, a license, which has been renewed from year to year, was issued to the defendant granting it permission to "use building, machines, and structures for keeping, storage, manufacture, transportation, refining and sale of crude and refined petroleums, oils and products thereof or related thereto," in accordance with certain plans submitted with the application. On August 1, 1919, a permit for building the refinery was duly issued to the defendant by the fire prevention commissioner, which contains specific and elaborate provisions designed to prevent the occurrence of fires and their spread to the premises of others. The requirements of both permits have been fully complied with. Notwithstanding all these precautions, it is found that fires and explosions have occurred and are still likely to occur. In no case has a fire reached within many feet of the outer line of the defendant's premises or endangered buildings of others. The master found that there is no danger of fire spreading near to neighboring properties.

Many plaintiffs testified to personal discomfort and bad

health in various forms to themselves and families; to injury to paint on the houses and to gardens; fright and nervous disturbances were claimed to be occasioned by offensive odors, fires and explosions. The plaintiffs offered expert evidence tending to prove the diminution in the rentals and the sales value of their premises by reason of existing conditions in the operation of the defendant's plant. The master found no injury to paint or gardens attributable to such operation; that the explosions are not of sufficient frequency and violence to constitute a nuisance; that in almost every instance rents of tenements in the district have increased since the defendant began to operate its plant, and there has been an increased demand for tenements in that locality, the demand appearing to exceed the supply; that in several cases the plaintiffs have moved nearer to the defendant's property; that closing the refinery would, until some other industry was established in its place, injure the rental value of the property of the plaintiffs, while the continued operation under conditions existing or likely to exist does not do so; and that the sales value of said property is not diminished because of circumstances for which the defendant may be held responsible.

Upon the question of the creation and emission of offensive and disagreeable odors, which seem to be the principal ground of complaint on the part of the plaintiffs, the master has made extended and definite findings, based upon evidence introduced at the hearings before him and upon five views taken on different dates during the trial and after its conclusion, as follows: Disagreeable and offensive odors arise from the operation of the defendant's plant and are carried to and upon the premises of the various plaintiffs when the wind blows in that direction from the defendant's location. In muggy, heavy, or foggy days such odors are apt to be stronger and to settle and remain on the premises of the plaintiffs, and have a tendency to remain and persist in closed rooms, and in the throats and nostrils of persons who breathe them. They are heavier and stronger when black smoke pours from the stacks. Such smoke arises more or less as a result of imperfect combustion of the fuel oil used

to feed the boiler fires, a condition which always obtains where oil is used as fuel. It is so used in many manufacturing plants in the district.

The report recites that some of the plaintiffs testified to having been awakened in the night in warm weather by odors which entered through open windows; that they were obliged to close the windows; that by reason of the close and impure air they suffered from headaches, loss of appetite and nausea. The master found, however, that the odors have not been of such volume and character as to awaken persons of normal sensitiveness and to require the closing of windows; that in cases where headaches and loss of appetite and nausea followed closing of windows, the condition was mainly caused by the close and impure air regardless of the odors in question. Several of the plaintiffs testified to lasting and serious effects on their general health, which they attributed to the frequent exposure to these odors. In this connection it is found that such persons were either abnormally sensitive to these particular odors, or were suffering from physical or mental ailments not attributable to the odors. The evidence was conflicting as to the frequency, extent, character and strength of these odors; many witnesses, including several of the plaintiffs, testified that they hardly ever noticed them. It is found that the general health of the many employees of the defendant, which include women, has been good; that at frequent intervals the residents of the district are subjected to disagreeable and unpleasant odors from the premises of the defendant, which will continue in greater volume if and when additions are made to the refinery.

It also appears that odors arising from the operation of many other industries located in this district are carried through portions of it when the wind and weather conditions favor such a result; that most of these concerns were in operation there before the defendant's refinery was erected; that a few of them produce odors somewhat similar to those arising from the defendant's operations, but they are not equal in volume or frequency in the district involved to those arising from the refinery; that nitric acid and sulphur fumes

are thrown off by one of these plants which pervade the district, or portions of it, at times, and when breathed are apt to cause irritation of the throat and coughing. The master describes the district as one where its inhabitants cannot expect air as pure and clean and free from odors as might be reasonably expected in a purely residential district of high grade. He found as a fact upon all the evidence that the odors now emitted by the defendant's plant through the district are not injurious to the health of normal persons, and that they do not exist and are not likely to exist, so as to be dangerous to the lives or health of any persons either on or outside the defendant's premises, unless such person is confined with them in a closed room where they are emitted. It is found that there is no danger to life or health by reason of any such odors which have passed through the outer air. After making specific, definite subsidiary findings upon all the issues involved he states his ultimate conclusions as follows: "I am not satisfied by the evidence that there has been any failure on the part of the defendant to comply with the statutes or the conditions of its licenses; nor that it has made any unlawful or improper use of its premises. In accordance with my view of the law as to the effect of its license upon the mixed question of law and fact involved, I find . . . that the business as now carried on by the defendant is not a nuisance."

Apart from the question of damages, two issues are presented for our determination: (1) Has the operation of the defendant's plant in fact amounted to a nuisance at common law? and (2) Has the defendant conducted its business in conformity with the licenses granted to it?

Whether a nuisance exists ordinarily is a question of fact. The master saw the witnesses, heard their testimony, and also visited the premises of the defendant on several occasions and observed the conditions as they existed at those times. His findings based upon conflicting evidence are before us without a report of the evidence and must stand, as we cannot say that they are not justified or that they are inconsistent. *Stodder* v. *Rosen Talking Machine Co.* 241 Mass. 245, 250. The language of the court in *Stevens* v.

*Rockport Granite Co.* 216 Mass. 486 is pertinent to the findings of the master in the case at bar. In that case it was said at page 490: ''We should hesitate to reverse a conclusion of the trial magistrate under these circumstances. The˙ familiar rule as to the effect to be given to findings by a master is that, where they rest upon conflicting oral testimony and upon observations made at a view, and have been affirmed by the court, they have every reasonable presumption in their favor. They will not be disturbed unless clearly erroneous.''

The subsidiary facts found are not inconsistent or contrary to the general finding that no nuisance exists. The general finding cannot be held to be clearly erroneous. While the odors, fires, and explosions complained of by the plaintiffs at times subject persons in that locality to some discomfort and annoyance, yet there is no finding that in this district, where there are many other industries in operation, and many residences, that any act of the defendant in the conduct of its business created a nuisance. The defendant is engaged in a lawful business in the conduct of which it is found that odors necessarily will escape into the air; but it also appears that the defendant has adopted the most approved methods and devices to control and confine such odors at an expense of many thousands of dollars; it also is further found that such odors would not be unbearable or injurious to the health of normal persons. No ground is shown for the assessment of damages, or the issuance of an injunction enjoining the defendant from operating its plant. The master has found that to close the refinery would, at least until some other industry was established in its place, injure the rental value of the plaintiffs' property and that its continued operation under existing conditions or those likely to exist will not have that effect. Whether there is a nuisance in a certain locality depends upon the attendant circumstances including the ˙ character of the neighborhood, the acts complained of and their effect upon the comfort or health of people in general. The district where the defendant's plant is situated has' for many years been increasingly devoted to manufacturing purposes; some of the plants were there located many years ago and from some of them odors are thrown off at times

which are offensive and disagreeable, but as those discharged by the defendant are not injurious to the lives or health of normal persons, it cannot be held that a nuisance exists in view of the findings of the master to the contrary.

It is a matter of common knowledge that in thickly settled manufacturing communities, the atmosphere is inevitably impregnated with disagreeable odors and impurities. This is one of the annoyances and inconveniences which every one in such a neighborhood must endure. Mere discomfort caused by such conditions without injury to life or health cannot be ruled as matter of law to constitute a nuisance. Each case must depend upon its own facts and no rule can be formulated which will be applicable to all cases. *Rogers* v. *Elliott,* 146 Mass. 349. *Downing* v. *Elliott,* 182 Mass. 28. *Stevens* v. *Rockport Granite Co., supra.*

As to the other grounds of complaint it is found that the explosions are not of sufficient frequency to constitute a nuisance; and that the fires create no danger of fire spreading in the neighborhood of the plaintiffs' property. As there is no finding that any plaintiff has suffered from fear or fright by reason of either explosions or fires, it follows that it cannot be said as matter of law that any act of the defendant constituted a nuisance. *Cremidas* v. *Fenton,* 223 Mass. 249. *Mansfield* v. *Atlantic Chemical Co.* 237 Mass. 56. *Stevens* v. *Dedham,* 238 Mass. 487. *Prest* v. *Ross,* 245 Mass. 342. The cases of *Sardo* v. *James Russell Boiler Works Co.* 241 Mass. 215, and *Cumberland Corp.* v. *Metropoulos,* 241 Mass. 491, cited by the plaintiffs are distinguishable in their facts from those in the case at bar.

The question remains whether the defendant has conducted its business in conformity with the licenses granted to it. It is settled that under statutes similar to those under which the defendant was granted the licenses, if the licensee has complied in all respects with the terms, what he does thereunder cannot be considered a nuisance or be restrained, even if without such licenses the acts done would be a nuisance. *Davis* v. *Sawyer,* 133 Mass. 289. *Commonwealth* v. *Parks,* 155 Mass. 531. *Murtha* v. *Lovewell,* 166 Mass. 391. *Commonwealth* v. *Packard,* 185 Mass. 64, 65, 66. *Levin* v. *Goodwin,* 191 Mass. 341. *Whitcomb* v. *Vigeant,*

240 Mass. 359. *Sawyer* v. *Boston Elevated Railway,* 243 Mass. 469. *Curran* v. *Boston Elevated Railway,* 249 Mass. 55, 58. The finding in substance that there has not been any failure on the part of the defendant to comply with the statutes or the conditions of its licenses, and that it has not made any unlawful or improper use of the premises is conclusive and constitutes a complete defence to the bill. The case of *Commonwealth* v. *Kidder,* 107 Mass. 188, is distinguishable from the case at bar. In that case it was said at page 193 that the statute there in question was "manifestly intended to protect the public against the dangers arising from the explosive and inflammable nature of petroleum." The decision in that case only goes to the extent of holding that a statute or license will not be a protection in cases where dangerous or objectionable elements can be eliminated by a proper conduct of the business. *Sawyer* v. *Davis,* 136 Mass. 239, 245. As petroleum cannot be refined without creating odors, and as the master's findings show that the defendant has exercised reasonable diligence to minimize such odors, and as it does not appear that further or additional precautions can reasonably be adopted to prevent the escape of such odors, the Kidder case is not at variance with the conclusion reached in the case at bar.

The exception to the admission by the master of a letter from the commissioner of public health to Edward E. Willard cannot be sustained. It was admitted only "as having a possible bearing upon the question of the issuance of an injunction," and was held incompetent for any other purpose. It is plain that, if incompetent for the limited purpose for which it was admitted, which we need not decide, its admission did not prejudice the rights of the plaintiffs. The remaining exceptions to the master's report have been carefully considered; they need not be referred to in detail as it is manifest from what has already been said that none of them can be sustained. As the findings disclose no error of law, the decree overruling the plaintiff's exceptions and confirming the report and the final decree dismissing the bill, must be affirmed.

*Ordered accordingly.*