FRANK F. STODDER & others *vs.* ROSEN TALKING MACHINE COMPANY.

Suffolk.   March 9, 1922. — April 14, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Equity Pleading and Practice,* Parties, Master's report. *Evidence, Res gestæ. Equity Jurisdiction,* To enjoin continuing nuisance, Damages.

A lessee of a building on a city street, who occupies the first floor as a retail shoe shop, and two subtenants, who occupy the second and third floors respectively as a tailor shop and shoe repairing shop, may join as plaintiffs in a bill in equity to restrain a dealer in talking machines from operating, in the entrance to his store on the opposite side of the street, a grafonola for advertising purposes in such manner as to be appreciably audible in the plaintiffs' shops and for damages caused by its noise to the plaintiffs in their business.

Exceptions to a master's report which deal with the weight of the evidence cannot be sustained where the findings of the master are based upon conflicting oral testimony which is not reported and upon a view taken by the master.

In a suit of the nature above described, certain exclamations made by customers in the shops of the plaintiffs were admitted in evidence for the limited purpose of showing that the music attracted their notice. *Held,* that the evidence was admissible, in principle, on the broad ground of declarations accompanying and explaining the acts of the customers.

In a suit in equity by the proprietor of a store on a city street to enjoin the operation for advertising purposes of a grafonola in the entrance to a store on the opposite side of the street and for damages, a master, to whom the suit was referred, found that the grafonola was played with a full tone needle, without a muffler, and with every variety of record practically all day from 10 A.M. to 5 P.M., that the noise injuriously affected the nerves of the plaintiff and his employees and interfered with the conduct of the plaintiff's business, that if the machine were played so that it could not be heard in the plaintiff's premises it would have all of the present advertising value and that the injury to the plaintiff and his employees was out of proportion to the advantage gained by the defendant in his method of playing. *Held,* that a decree for an injunction and damages was warranted.

BILL IN EQUITY, filed in the Superior Court on July 21, 1920, to enjoin the defendant, its officers, agents, servants and em-

ployees from playing or permitting to be played either in the doorway or entrance outside of its premises or inside the store premises near the door or doorway any records on a talking machine, victrola, graphophone, phonograph or grafonola in such manner as to cause noise produced from the playing of such records to be audible or heard in any part of the respective premises occupied by the plaintiffs, and for damages.

The defendant demurred on grounds described in the opinion and by order of *Sisk,* J., the demurrer was overruled. The suit then was referred to a master. Material findings of the master are described in the opinion. The defendant filed exceptions to the master's report founded upon the following objections:

"1. To the finding . . . 'I am satisfied from the evidence that if one of the masters, "Kreisler" for instance, were to play his violin in the defendant's doorway as continuously as the defendant's machine is played, it would materially affect the normal person attempting to do business within the immediate vicinity,' said objection being based upon the inconsistency between this finding and the other findings in the report and for the reason that if this finding is correct the other findings relating to the same subject matter must be incorrect.

"2. To the following finding . . . 'I find that it did injuriously affect the employees of the plaintiffs by a gradual wear on their nervous systems, and in some instances producing headaches, in other instances making it more difficult for the person to concentrate on his or her particular work, and in other instances getting the person in a condition such as is generally described with "nerves on edge,"' said objection being based upon the inconsistency between this finding and the other findings in the report on the same subject and upon [the fact that upon] the face of the report it clearly appears that there is no finding from which such an inference or finding of fact can by the master be made.

"3. To the following findings . . . 'I find that it is a substantial addition to all the other noises absolutely incident to the street, that is, it tends to reduce and diminish the efficiency of the plaintiffs and their employees by reason of the fact that their minds and also the minds of customers are often diverted and is the cause of some harm and injury to the health and com-

fort of ordinary persons and does to some extent interfere with the conduct and business of the plaintiff Stodder and to a smaller degree interferes with the progress of the business of the plaintiff Hurwitz,' and for ground of objection the defendant says that said findings are inconsistent with the other findings in the report on the same subject matter and that there are no findings in the report from which such an inference of fact can be made.

"4. To the finding . . . 'I further find that the injury or discomfort caused the plaintiffs and their employees is out of proportion to the advantage accruing to the defendant in the playing of the machine as it is played over what would accrue to it if it were played in such a way that it could not be heard or appreciably heard in the plaintiff's place of business,' and for ground of objection the defendant says that the said findings are inconsistent with the other findings in the report on the same subject matter and that there are no findings in the report which entitle the master to draw the inference that he has in the aforesaid finding.

"5. To the following evidence: 'The plaintiffs offered to show by a number of witnesses largely clerks and employees, that customers and other persons visiting the place of business of the plaintiffs did make exclamations regarding the music and that each customer making an exclamation completed the transaction in hand before leaving the place of business.' Evidence of this nature was offered from several witnesses and their testimony was in substance as follows: Q. 'Have you heard any exclamations by your customers who have come into this store, exclamations regarding that machine?' A. 'Yes, sir; I have.' — Q. 'Will you tell the court what exclamations you have heard customers make'; and the answers were along the general line: 'It is terrible.' 'How do you stand that damn thing all day?' 'Can't you get away from it?' 'Do you have to listen to it all day?' 'Don't you get sick of listening to that?' 'Oh, that damn thing.' 'I wish that thing would stop,' and other similar remarks.

"6. To the assessment of ·damages in favor of the plaintiffs Stodder and Hurwitz for the reason that several assessments of damages in favor of the two respective plaintiffs cannot be made in this action.

"7. To the assessment of damages made in favor of the plaintiffs Stodder and Hurwitz, and says that there are no facts re-

ported that justify any damages or at most only justify nominal damages and that there are no facts reported from which a finding beyond nominal damages can be made.

"8. To the finding of the master that the music complained of tends to reduce and diminish the efficiency of the plaintiffs and their employees on the ground that on the face of the report the master finds that the things of which the plaintiffs complain can be equally attributable to other constant noises on the street and therefore on the face of the report any finding by the master that the music tends to reduce and diminish the efficiency of the plaintiffs' employees is a pure guess.

"9. To the finding of the master that the music tends to reduce and diminish the efficiency of the plaintiffs and their employees and that it is the cause of harm and injury to the health and comfort of ordinary persons, for the reason that there is no finding or fact upon which such a finding of fact can be made."

Upon a hearing by *Sanderson*, J., there were entered an interlocutory decree overruling the defendant's exceptions and confirming the report and the following final decree:

"1. That the defendant corporation, its officers, agents, servants and employees be and they hereby are forever enjoined and restrained from playing or permitting to be played either in the doorway or entrance outside of its store premises, No. 11 and 11A School Street, Boston, Mass., or inside the store premises near the door or doorway of the said store, any records on a talking machine, victrola, graphophone, phonograph, or grafonola in such a manner as to cause the noise produced from the playing of records on said victrolas, talking machine, graphophone, phonograph, or grafonola to be appreciably audible or heard in any part of the respective places of business occupied by the plaintiff Frank F. Stodder at 10 and 14 School Street, Boston, and the plaintiff, Charles Hurwitz, at 12 School Street, Boston.

"2. That the defendant be ordered to pay to the plaintiff Frank F. Stodder, damages in the sum of $750 and that execution may issue for said damages.

"3. That the defendant be ordered to pay to the plaintiff, Charles Hurwitz, damages in the sum of $100 and that execution may issue for said damages.

"4. That the defendant pay to the plaintiffs Stodder and Hur-

witz costs of suit taxed at $98.58, and execution is ordered to issue therefor."

The defendant appealed from the interlocutory decrees overruling the demurrer and the defendant's exceptions and confirming the master's report and from the final decree. The plaintiffs appealed from the final decree.

*L. Marks,* for the defendant.

*J. M. Hoy,* (*S. Gottlieb* with him,) for the plaintiffs.

DE COURCY, J. The plaintiff Stodder carries on a retail shoe business at No. 10 and 14 School Street, in Boston. He sublets the second floor of the building to the plaintiff Hurwitz for a tailor shop, and the third floor to the plaintiff Imbruglia for shoe repairing. The defendant's place of business is at No. 11 School Street, the entrance being almost directly opposite the shops of the plaintiffs. The width of the street between walls is about thirty-six feet. The door of the defendant's store is ten feet in from the sidewalk; and the intervening space is in the shape of a trapezoid, twelve feet wide at the sidewalk and six feet wide at the door. At about the middle of this doorway space the defendant located a Columbia grafonola for advertising its merchandise, and operated it by an electric motor. 'This bill in equity was brought praying for an injunction and damages.

The defendant demurred to the bill on the ground that these plaintiffs could not join in a suit of this sort. So far as the plaintiff Imbruglia is concerned, the finding of the master that he is entitled to no damages renders his joinder immaterial; as the issuing of an injunction is not affected by his presence or absence as party. All the plaintiffs complain of a single wrong committed by the defendant, which affects them alike and entitles them to the same relief in kind. As was said in *Cadigan* v. *Brown,* 120 Mass. 493, 495, where the owners of several lots of land joined in a bill to restrain a private 'nuisance: " . . . the plaintiffs . . . have a common interest in the subject of the bill. They are affected in the same way by the acts of the defendants, and seek the same remedy against them. There is no danger of confusion in the trial, or of injustice to the defendants, from the joinder of the plaintiffs; but the rights of all parties can be adjusted in one decree, and a multiplicity of suits is prevented." The additional ground of demurrer, that the plaintiffs do not

state a cause of action entitling them to equitable relief, is dealt with later. The defendant also filed exceptions to the master's report. Those numbered 1, 2, 3, 4, 7, 8 and 9 deal with the weight of the evidence. The findings are based upon conflicting oral testimony, which is not reported, and upon the view taken by the master. We cannot say that they are not justified, or that they are inconsistent. *Stewart* v. *Hanreddy*, 212 Mass. 340. What we have said with reference to the demurrer disposes of the sixth exception. And see *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 493. The fifth relates to the admission by the master of exclamations made by customers. This evidence was admitted only for the limited purpose of showing that the music did attract their attention. It was admissible, in principle, on the broader ground of declarations accompanying and explaining the acts of the customers. *Hubbard* v. *Allyn*, 200 Mass. 166, 174.

As to the merits: it is unnecessary to recite at length the findings of the master. Among them are the following: The machine complained of produced a tone slightly louder than that made by others of the same general type; and the defendant made use of the loud or "full tone" needle, and no muffling device. The machine was played substantially all day, from 10 A.M. until 5 P.M. or later, except during cold winter and stormy weather. The records consisted of every variety, — singing, speaking, and instrumental; and the music or "noise" was plainly audible in all parts of the premises occupied by the plaintiffs. The continuous and monotonous playing of piece after piece, according to his findings, "did injuriously affect the employees of the plaintiffs by a gradual wear on their nervous systems, and in some instances producing headaches, in other instances making it most difficult for the person to concentrate on his or her particular work, and in other instances getting the person in a condition such as is generally described with 'nerves on edge.'" Further, he finds that the noise of the defendant's grafonola "is a substantial addition to all the other noises absolutely incident to the street, that is, it tends to reduce and diminish the efficiency of the plaintiffs and their employees by reason of the fact that their minds and also the minds of customers are often diverted and is the cause of some harm and injury to the health and comfort of ordinary persons and does to some extent inter-

fere with the conduct and business of the plaintiff Stodder and to a smaller degree interfere with the progress of the business of the plaintiff Hurwitz." Finally, he finds that if the machine were played in such a manner that it could not be heard in the places of business of the plaintiffs, it would have practically all of its present advertising value; and that the injury or discomfort caused them and their employees is "out of proportion to the advantage accruing to the defendant in the playing of the machine as it is played over what would accrue to it if it were played in such a way that it could not be heard or appreciably heard in the plaintiffs' place of business."

On the facts found by the master it is clear that the decree for an injunction and damages was warranted. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486. *Davis* v. *Sawyer,* 133 Mass. 289. *Godin* v. *Niebuhr,* 236 Mass. 350. And we see no necessity for modifying the terms of the decree by omitting the word "appreciably," as urged by the plaintiffs.

*Decree affirmed with costs.*