Roman J. Marshall & others *vs.* Harrison E. Holbrook.

Worcester.     March 9, 1931. — September 2, 1931.

Present: Rugg, C.J., Crosby, Pierce, Wait, & Sanderson, JJ.

*Nuisance. Equity Jurisdiction,* To enjoin nuisance, Damages. *Zoning. License. Equity Pleading and Practice,* Master: findings; Decree. *Evidence,* Presumptions and burden of proof.

A suit in equity could be maintained to enjoin, as a nuisance, the operation of two drop forge hammers in a plant of the defendant which was located in a mixed residential and industrial district of a city and which was properly built and was operated without negligence, but in such a manner as to cause substantial interference with the reasonable comfort and enjoyment of life of the plaintiff in the occupation of his home nearby and to cause substantial injury to his property, although that district was classified by the zoning ordinance of the city as a restricted "industrial" district from which certain speci-

fied industries, not including a plant like that of the defendant, were excluded: the zoning ordinance, merely because it did not specifically exclude such a plant from that district, did not have the legal effect of a license or legislative sanction to the defendant to operate his plant therein, and the defendant gained no right by the ordinance to carry on his operations in such a manner as to create a nuisance injuring the plaintiff.

The plaintiff in the suit in equity above described also sought to recover damages. A master to whom the suit was referred stated that he was unable to find the amount of damage to the plaintiff and that accordingly he made no finding on damages. A judge of the Superior Court, being of opinion that the plaintiff was not entitled to relief by way of injunction, ordered the entry of a final decree dismissing the bill, without prejudice to the right of the plaintiff to bring an action for damages. *Held,* that

(1) The master's findings meant that the plaintiff had failed to introduce evidence upon which he could make a finding as to the amount of damages;

(2) The plaintiff, having failed in his proof on this issue at the hearing before the master, was not entitled to have the right reserved to bring an action at law to recover damages or to have a further hearing on the same issue in the suit;

(3) This court ordered the decree of the Superior Court reversed and the entry of a final decree granting to the plaintiff relief by way of injunction.

BILL IN EQUITY, filed in the Superior Court on March 10, 1930, and afterwards amended.

The suit was referred to a master. The bill, material facts found by the master and the terms of a final decree ordered by *Whiting,* J., to be entered are described in the opinion. The judge reported the suit for determination by this court. The provisions of the zoning ordinance of Worcester relative to industrial "A" districts were:

"In any Industrial 'A' District no building or structure shall be used and no building or part of a building shall be erected which is intended or designed to be used, except accessorarily and incidentally, for any of the following specified purposes: . . . [here follows an enumeration of certain industries, not including a drop forge plant]."

*John J. Moynihan,* for the plaintiffs.

*E. H. Crandell,* for the defendant, submitted a brief.

SANDERSON, J. This suit is brought by several plaintiffs, each of whom owns or occupies property near that of the defendant, seeking to have the operation of the defend-

ant's drop forge plant enjoined as a nuisance, and to recover damages caused thereby.

In September, 1929, the defendant purchased a tract of land on Rockdale Street, in Worcester, with a frontage of one hundred twenty feet on the street and a depth of one hundred forty-four feet, the easterly boundary line being upon the right of way of the Boston and Maine Railroad. Upon this land near the street line the defendant erected a building for use as a drop forge plant and installed appropriate machinery, including two drop hammers, investing in the property $35,000. The building is forty feet in width, sixty-five feet in length, and one story in height. The westerly portion, which is nearest the street, is constructed of bricks. The side walls are in part of brick and there is a partition of the same material across the building. The bricked in portion is used for a machine shop and contains ordinary machinery of such a shop creating no noticeable noise or vibration. The remainder of the building is constructed of corrugated iron. The two drop hammers are located in the forge shop where there are a trimming press, forging machine and two furnaces. To operate the hammer the operator pushes down a pedal, and so long as it is held down the ram rises and falls. Blows are struck at intervals of one second. Commonly ten to fifteen consecutive blows are struck. Each impact of the ram on the base makes noise and causes some vibration. The operation of the remaining part of the forge shop equipment creates no noise or vibration appreciable in the houses of the plaintiffs. The operation of the large and small hammers began in January or February, 1930, and has continued intermittently since. The noise of the°large hammer at a distance of one mile sounds like the pounding on a piece of steel with a hand hammer by some one in the next room with the door closed. In the plaintiffs' houses the noise is loud and disagreeable. It is a heavy thud with a metallic clang. The hammers cannot be operated without noise, and there is no known way of muffling or lessening it. The defendant's plant is properly built and nothing has been omitted which might lessen the noise. The material of which it is constructed and its

plan or design are entirely proper and usual. In the operation of the plant certain doors and windows must be kept open because of gases and heat. Drop forging is a necessary and important part of the business of manufacturing metal into useful objects. The defendant cannot operate a drop forge plant without hammers such as those complained of. The noise caused by the repeated strokes of the hammers is such as seriously to interfere with the ordinary comfort of human existence and has a very real and noticeable effect upon people. The repeated thud or clang of hard metal on hard metal at one second intervals has affected the nervous systems of some of the plaintiffs causing headaches and making sleeping or resting in the daytime impossible. The plaintiffs' properties are damaged by the operation of these hammers and the neighborhood has been rendered a less desirable one in which to live. The vibration caused by the impact of the ram is distinctly perceptible in the house of each plaintiff and is sufficient ultimately to cause some physical damage to the buildings.

The neighborhood is of a mixed residential and industrial character; other large manufacturing plants are located there, some of which have been there many years. One of them contains a large drop hammer, but not a board hammer. The location and the accessibility of the railroad make the land adjoining it appropriate for manufacturing purposes and less appropriate for residential purposes. The westerly side of Rockdale Street and the region beyond in the same direction are exclusively residential, devoted mostly to houses occupied by owners.

On December 29, 1924, the city council of Worcester, under G. L. c. 40, § 25, adopted a zoning ordinance which divided the city into districts classified respectively as residence "A," "B" and "C" districts, business districts and industrial "A" and "B" districts. The defendant's plant and the plaintiffs' houses are in an industrial "A" district. A drop forge plant in this district violates no provision of the zoning ordinance, although certain specified industries are excluded from it which are permitted in the unrestricted industrial "B" district.

On October 9, 1929, the defendant applied in writing to the building department of the city of Worcester for a permit to erect his building, the application showing that the building was to be used for a drop forge plant. The building department approved the application and issued a permit, which the defendant posted on his property as soon as issued and attached to the building as soon as construction was begun. The construction of the building was approved from time to time by the department. All pertinent city ordinances relating to its construction were complied with.

The master found "If the adoption of this ordinance as a matter of law impresses upon the neighborhood the character of an industrial district so that it has lost entirely any character of a residential district, then the defendant's plant does not constitute a nuisance. If the adoption of this ordinance and the issuance of the permit above referred to constitutes a legislative sanction to the defendant to build, occupy and operate a drop forging plant in this location, then I find that his plant is being conducted without negligence and without unnecessary disturbance of the rights of others and is not a nuisance. If the adoption of this ordinance is inoperative to change the actual character of the neighborhood in the eyes of the court or if this ordinance is not in the nature of a license to the defendant to operate a plant of this character, then I find that the operation of the defendant's plant because of the noise and vibration which it causes is a nuisance. I find that the value and the rental value of the plaintiffs' properties have been reduced by the operation of the defendant's plant. I am unable to find by what amount and can therefore make no findings as to damages."

The trial judge ruled upon the facts found by the master that the adoption of the zoning ordinance referred to in the master's report does not entirely change the character of the neighborhood so as to impress the character of an industrial district upon it and to take away entirely its character as a residential district; that the adoption of the ordinance does not act as a license in such a manner that what the defendant does thereunder cannot be considered a nuisance or be restrained even if without such license the acts done would be

a nuisance; and that the carrying on of the defendant's business in the manner described in the master's report constitutes a nuisance, but that because of the importance of the industry, the manner in which it is conducted, the difficulty of locating the plant within the permitted area so that it would not be a nuisance, and the probably increasing industrialization of the district, injunctive relief should be denied. A decree was ordered to be entered dismissing the bill without prejudice to the right of the plaintiffs to bring an action at law for damages and the case was reported.

The question whether a nuisance exists is ordinarily one of fact and it is not contended that the master was wrong in his conclusion that apart from rights growing out of the zoning ordinance the operation of the hammers in the defendant's plant was a nuisance. A person may be protected by statute or by license issued under an ordinance enacted with legislative sanction in doing an act or conducting a business which apart from such authorization would be a nuisance. In *Commonwealth* v. *Parks*, 155 Mass. 531, 532, the court said: "It is settled that, within constitutional limits not exactly determined, the Legislature may change the common law as to nuisances, and may move the line either way, so as to make things nuisances which were not so, or to make things lawful which were nuisances, although by so doing it affects the use or value of property." In *Levin* v. *Goodwin*, 191 Mass. 341, 343, the court said: "Nor can there be any doubt that a person carrying on a business may be licensed to make a noise, which but for the license would be a nuisance." In *Davis* v. *Sawyer*, 133 Mass. 289, the ringing of a factory bell for the purpose of arousing the operatives was held to be a private nuisance. Following this decision the Legislature by St. 1883, c. 84, authorized manufacturers and others employing men to ring bells and use whistles and gongs of such size and weight and in such manner and at such hours as the board of aldermen of cities or the selectmen of towns may in writing designate. The same manufacturer who had been found to have violated the law by ringing the bell was authorized by the selectmen in pursuance of the statute to ring the

same bell at the same hour as formerly, and the same acts which before had been decided to constitute nuisances were then held to be legal. *Sawyer* v. *Davis*, 136 Mass. 239. Other cases illustrating the principle that acts which might otherwise be nuisances may be legalized by statute, license or permit are: *Call* v. *Allen*, 1 Allen, 137, *Murtha* v. *Lovewell*, 166 Mass. 391, *Commonwealth* v. *Packard*, 185 Mass. 64, *Whitcomb* v. *Vigeant*, 240 Mass. 359, *Strachan* v. *Beacon Oil Co.* 251 Mass. 479, 485, and *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511.

The question to be decided is whether the owner of an important industry like that of the defendant, which when properly conducted creates a nuisance, may locate in a district where, according to the zoning ordinance, such an industry is not excluded, and thereby gain the same kind of protection in carrying on the industry that he would have if authorized by statute or by license in pursuance of a valid ordinance to conduct the business in that place.

Article 60 of the Amendments to the Constitution of the Commonwealth provides that "The general court shall have power to limit buildings according to their use or construction to specified districts of cities and towns." In *Opinion of the Justices*, 234 Mass. 597, 611, it is stated that "The segregation of manufacturing, commercial and mercantile business of various kinds to particular localities, when exercised with reason, may be thought to bear a rational relation to the health and safety of the community." In *Inspector of Buildings of Lowell* v. *Stoklosa*, 250 Mass. 52, 60, the power of a municipality to divide its territory into business and residential districts was recognized. By the terms of the zoning ordinance in question buildings for the purpose of any trade, business, or industry of any kind "that is noxious or offensive by reason of . . . noise, or vibration" are expressly prohibited in the business district. Over twenty specified industries are excluded from industrial "A" district. Under this zoning ordinance the beneficial results of the segregations therein provided for are sought to be accomplished by processes of exclusion of certain kinds of buildings or certain uses of buildings from

some districts and not from others. If an industry is not excluded from a district it may, so far as the zoning ordinance is concerned, be located therein. But this zoning ordinance is not in its legal effect like a license or legislative sanction to carry on in a district every kind of business that may not be expressly excluded therefrom, and if there are reasons apart from the zoning law why the business may not legally be carried on in the district, the zoning law in the case at bar furnishes no protection to it. The defendant, by locating in a district from which his business was not excluded, gained no right so to operate his plant as to create a nuisance to the injury of the plaintiffs. Because of the effects of the operation of the two drop forging hammers upon the personal and property rights of the plaintiffs the judge was right in his conclusion that upon the facts found the carrying on of the defendant's business in the manner described constituted a nuisance.

The bill alleged that the operation of the defendant's plant had caused damages to the plaintiffs. We interpret the master's finding that the value and the rental value of the plaintiffs' properties have been reduced by the operation of the defendant's plant, but that he was unable to find by what amount, and his statement that he makes no finding as to damage, to mean that the plaintiffs had failed to introduce evidence upon which he could make a finding as to the amount of their damages. The plaintiffs having failed in their proof on this issue at the hearing before the master are not entitled to have the right reserved to bring actions at law to recover the same or to have a further hearing on the same issue in this suit. The order for a decree must be reversed and a decree entered enjoining the operation of the two drop forge hammers in the defendant's building in such a manner as to cause a substantial interference with the reasonable comfort and enjoyment of life of the respective plaintiffs in the occupation of their homes, or in such a manner as to cause substantial injury to their property.

*Ordered accordingly.*