MICHAEL J. SHEA & others *vs.* NATIONAL ICE CREAM COMPANY, INC., & another.

Suffolk.    May 16, 1932. — September 12, 1932.

Present: RUGG, C.J., CROSBY, WAIT, FIELD, & DONAHUE, JJ.

*Nuisance. Equity Jurisdiction,* To enjoin nuisance. *Equity Pleading and Practice,* Decree.

Upon findings, in a suit in equity against a corporation manufacturing and selling ice cream and against the owner of the land upon which the corporation's factory was situated, that the factory was located in a thickly settled residential district, where the manufacturing had been started in a small way in 1915 in a stable and thereafter had been increased by the building of factory buildings and the addition of machinery to the time of the commencement of the suit in 1930; that the breaking of ice, rattling of cans and use of machinery and trucks by the defendant corporation resulted in considerable noise both day

and night, which was harmful to the health and comfort of ordinary people; that a device on the roof of the factory resulted in a spray of water being blown into the surrounding homes and upon pedestrians nearby, although it was practicable for the defendant corporation to avoid this to some extent by the use of another device; that the defendant corporation permitted an offensive condition in the street through the dripping of materials from its trucks standing there; that the defendant corporation maintained an exhaust pipe which blew hot air over the plaintiff's land; and that "the business was conducted in such a manner as to be materially detrimental to the reasonable use or value" of the plaintiff's property, a final decree, enjoining the defendant corporation from using the spraying device, from operating any machinery or using any trucks at the factory between 9 P.M. and 7 A.M., and from conducting its business "in such an unreasonable manner as to interfere with the reasonable comfort and enjoyment of life by the plaintiffs or ordinary people," was not broader than required for the protection of the plaintiff and did not constitute a violation of the defendant's rights of property.

It further was proper, in the suit in equity above described, to enjoin the other defendant, the owner of the premises on which the ice cream factory was located, from permitting the defendant corporation to conduct its business thereon "in such an unreasonable manner as to interfere with the reasonable comfort and enjoyment of life by the plaintiffs or ordinary people."

BILL IN EQUITY, filed in the Superior Court on November 10, 1930, described in the opinion.

The suit was heard by *Keating*, J. Material findings, and a final decree entered by order of the judge, are described in the opinion. The defendants appealed.

*F. L. Simpson*, (*J. Stone* with him,) for the defendants.

*H. Miller*, for the plaintiffs.

CROSBY, J. This is an appeal from a final decree whereby the defendant National Ice Cream Company, Inc., is enjoined from using a spray pond device, so called, at its factory on London Street, in Boston, and from operating any machinery at the factory or moving any trucks therein, or having any trucks go to or from the factory between 9 P.M. and 7 A.M. of the following day. It is further enjoined from conducting its business "in such an unreasonable manner as to interfere with the reasonable comfort and enjoyment of life by the plaintiffs or ordinary people." The defendant Wise is enjoined from permitting the defendant National Ice Cream Company, Inc., to

conduct its business on the premises above described "in such an unreasonable manner as to interfere with the reasonable comfort and enjoyment of life by the plaintiffs or ordinary people."

The trial judge made the following findings: The defendant Wise who, with her family, owns all the stock in the defendant corporation, in 1915 owned the lot on which the factory stands. At that time there were two three-tenement houses on the lot and a stable in the rear. In that year her husband remodeled the stable and began making ice cream in it. The houses of the plaintiffs had been erected several years before 1915. In 1916 the stable was torn down and a brick building erected in its place; in 1928 the two dwelling houses were torn down and the two-story brick factory was built, more machinery was put in, and more trucks were bought, there being nine trucks for the delivery of ice cream. In 1928 not only was the business of making ice cream increased, but machinery was added for the purpose of making the ice required in the business. The neighborhood is residential and thickly populated. So far as appears, the only invasion of this residential district by manufacturing has been by the defendants as above recited. It has been a gradual but increasing invasion from small beginnings, in an old stable, to a brick factory two stories high, occupying the entire lot and with a street frontage of forty-five feet and a depth of about one hundred feet. On one side of the factory a branch of the Boston City Hospital, used as a relief station, is located. The judge found specifically that the allegations of paragraphs 6, 7, 8, 9 and 10 of the bill were true. Those allegations are: "6. That in the conduct of said business by the respondent corporation, considerable noises have been produced for long periods of time, in the early hours of the morning and far into the night, due to the breaking of ice, the rattling of cans, the operation of machinery, the operation, loading and unloading of trucks, and other unseemly and obnoxious noises"; "7. That in the manufacture of ice at said premises, a continual large spray of water flows from a device erected on the roof of said respondents' factory

which is blown by the winds into the homes and onto the food of your complainants and through windows of the general neighborhood, and onto the faces and clothing of pedestrians on the sidewalks in the immediate vicinity"; "8. That the respondent corporation has permitted its large trucks to remain on said London Street in front of the respondents' premises and in front of other premises, for long and unreasonable periods of time, from which trucks melted ice, ice cream, salt and sweet water would drip and run onto the sidewalks and pavements of London and Porter streets, both of which streets are public highways"; "9. That the said melted ice cream, ice, salt and sweet water produces a white substance over said London and Porter streets, which breeds flies and germs and also produces offensive odors and that the same is a menace to the health of the complainants and their families"; "10. That in the operation of its business, the respondent corporation maintains exhaust pipes which protrude from said factory building and extend over the land of said Helen Lieberman, one of your complainants, from which exhaust pipes hot air is blown from the respondents' premises and onto the land and vegetation of said Helen Lieberman, complainant, thereby damaging and destroying the vegetables and flowers on the land of said Helen Lieberman."

It thus appears that the defendants have not only invaded this thickly populated residential district, but have operated the machinery in the factory both night and day. They do not complain that the findings of fact made by the trial judge were not warranted by the evidence, but contend that the injunction issued was broader than required for the protection of the plaintiffs against the nuisance created and maintained, and constituted a violation of the defendants' rights of property. The terms of the injunction must be considered in the light of the facts found by the trial judge. Since the evidence is not reported the findings must be accepted by this court as true. The decree cannot rightly be modified or set aside unless such is required by justice.

The first part of the injunction prohibits altogether the use of the spray pond. It is plain that the use of this

device is a nuisance. The judge found that "it is practicable for the defendant corporation to adopt some other method of cooling the water than by means of the spray pond device, and thus to avoid, to some extent, interfering with the reasonable comfort or enjoyment of those living in the immediate vicinity of the factory." The part of the decree restraining its use must stand.

The second part of the decree enjoins, after 9 P.M. and before 7 A.M., (a) the operation of any machinery at the factory; (b) the moving of any trucks within the factory; (c) the having of any trucks go to or from the factory. In view of the finding that this is "practically a residential district" the second part of the decree was fully justified. There is no sound reason why residents of a thickly populated district should not be protected from disturbance, during the ordinary sleeping hours of the night, by the invasion of machinery, the operation of trucks within the building and the running of trucks to and from the building. It is to be observed that this part of the decree relates wholly to the ordinary hours of sleep except as to the operation of the spray pond.

The injunction granted against the defendants was fully justified if not required. The decision in *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, and other cases cited by the defendants are not in conflict with what is here decided. The facts found in the present case show that the acts complained of constituted a nuisance. The decree is wholly justified by what was said in *Stevens* v. *Rockport Granite Co.* at page 488: "The law of nuisance affords no rigid rule to be applied in all instances. It is elastic. It undertakes to require only that which is fair and reasonable under all the circumstances. In a commonwealth like this, which depends for its material prosperity so largely on the continued growth and enlargement of manufacturing of diverse varieties, 'extreme rights' cannot be enforced. One who settles in a district, which possesses natural resources of a special kind, cannot prohibit the development of those resources merely because it may interfere in some degree with personal satisfaction or aesthetic enjoyment. No one can

move into a quarter given over to foundries and boiler shops and demand the quiet of a farm. On the other hand, the noisy or noisome factory cannot with immunity invade territory stamped by use for residence. The test whether a nuisance exists through noise in any case depends upon all the attendant conditions. It is not open to doubt that noise alone may constitute a nuisance. That which is proper in one place might be highly objectionable in another. That which well might be enjoined in one region would be innocuous in another. That which would be permitted at one hour or season might be restrained at another." The defendants are entitled to a reasonable use of their property. It is plain, however, that it cannot be so used as to disturb the plaintiffs, who have a right to sleep at night in their own homes. *Wesson* v. *Washburn Iron Co.* 13 Allen, 95.

The judge found that the "noises would be harmful to the health and comfort of ordinary people, and constitute a nuisance"; that "one or more of the plaintiffs complained to one or more of the officers of the defendant corporation of the noise and other objectionable elements in the conduct of the business by the defendant corporation, but the manner of conducting the business was not changed"; and that "the business was conducted in such a manner as to be materially detrimental to the reasonable use or value of the plaintiffs' property."

It cannot be said upon the facts found that, as matter of law, the decree was broader than required to protect the rights of the plaintiffs. The case is governed in principle by the cases above referred to, and by *Cumberland Corp.* v. *Metropoulos*, 241 Mass. 491. See also *Marshall* v. *Holbrook*, 276 Mass. 341.

It follows that the final decree should be affirmed with costs of the appeal.

*Ordered accordingly.*