ALBERT GODARD *vs.* BABSON-DOW MANUFACTURING
COMPANY
(and a companion case [1]).

Suffolk.   November 4, 1942. — February 24, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Nuisance. Equity Jurisdiction,* Nuisance. *War Law. Landlord and Tenant,* Nuisance, Tenant's liability to landlord. *Real Property,* Reversion. *Equity Pleading and Practice,* Appeal.

Noise and vibration of the third floor of a manufacturing building, which resulted from operation of a motor, shafting, pulleys and belts attached to the ceiling of the second floor by a tenant thereof to supply power to his machines and which injuriously affected the comfort, health and efficiency of the employees of the tenant of the third floor and interfered with his business, constituted a nuisance and the tenant of the third floor was entitled to have the tenant of the second floor enjoined from maintaining such nuisance in 1942 where both tenants were engaged in the production of necessary war materials for the United States government and it was practicable for the tenant of the second floor to eliminate the noise and vibration by the installation of individual motors.

Section 309 of U. S. C. (1940 ed.) Title 50, "War," does not as a matter of law authorize one engaged in the production of necessary war materials within the scope of that section to maintain, as against another also so engaged, a nuisance which it is practicable to abate.

The owner of a business building, lessor of the second floor thereof under a lease containing a covenant by the lessee that he would not carry on any trade "offensive . . . [or] injurious to any persons or property," was entitled to relief against the lessee respecting the maintenance of certain machinery which caused "very considerable vibration" of the third floor of the building and was a nuisance to a tenant thereof.

On an appeal in a suit in equity this court could not consider a contention based on a fact alleged in a brief but not appearing in the record.

[1] The companion case is by Charlestown Five Cents Savings Bank against the same defendant.

Two BILLS IN EQUITY, filed in the Superior Court on February 6, 1942.

Following confirmation of a master's report, final decrees were entered by order of *Broadhurst*, J., enjoining the defendant in the suit by Godard "from operating, or from suffering or permitting to be operated or otherwise used, in or upon the second floor of the building . . . any machinery in such manner as to interfere with the reasonable comfort of, or business of, or enjoyment of life by, the plaintiff or his employees or invitees"; and enjoining the defendant in the suit by Charlestown Five Cents Savings Bank "from operating, or from suffering or permitting to be operated or otherwise used, in or upon the second floor of the building . . . any machinery in such manner as to interfere with the reasonable comfort of, or business of, or enjoyment of life by any and all of the tenants of the plaintiff in the said building, or the employees or the invitees of the said tenants, or of the reasonable use of the said building by the plaintiff." The defendant appealed from the final decree in each case.

*W. P. Murray*, (*A. Zimble* with him,) for the defendant.

*J. B. Ford*, for the plaintiff Godard.

*M. L. Sherin*, for the plaintiff Charlestown Five Cents Savings Bank.

Cox, J. The plaintiff Charlestown Five Cents Savings Bank, hereinafter referred to as the bank, is the owner of a three-story building in Boston, the entire third floor of which is occupied by the plaintiff Godard, hereinafter referred to as the plaintiff, under a written lease, the second floor being occupied by the defendant under a written lease. Each plaintiff brought a bill in equity on February 6, 1942, seeking to enjoin the defendant from maintaining an alleged nuisance in the building. The suits were referred to a master in whose report the following facts appear.

The building in question is designed and constructed for manufacturing purposes with exterior walls of brick. The interior is of mill construction "so-called," the posts, beams and floors being of wood. Although the building is of old

type, it is substantially built and sound. The plaintiff, at the time his bill was filed and at the time of the hearing before the master, was engaged in fulfilling a contract for ten thousand cloth coats for the United States army. His premises consist of a large front room, approximately one hundred twenty feet in length, and a smaller rear room. On one side of the front room there is a line of sewing and buttonhole machines, and along approximately one third of the length of the other side, there is a line of similar machines and tables. A pressing machine occupies most of the center of the room. Power for the plaintiff's machines is furnished by individual motors attached to each machine. The plaintiff has about forty employees, most of whom are women, the greater number of whom constantly sit and sew at the machines. When the plaintiff first occupied the third floor, the second floor was vacant, and before the defendant entered under its lease, it was familiar with the nature and character of the plaintiff's manufacturing operations, his operatives and the layout of his plant.

The defendant's lease was dated November 21, 1941. It fitted up the second floor for its machine shop and occupied its premises in January, 1942. It installed milling machines, lathes, "drill presses," drills and stamping machines, aggregating about forty, most of which are in the nature of precision machine tools. Power for the greater part of this machinery is derived from a twenty-five horse power electric motor which is hung from a heavy plank inserted between and fastened by steel brackets to two ceiling beams, in the approximate center of its premises. The beams are about twenty by sixteen inches, and are supported by fourteen-by-fourteen-inch wooden posts. The height from the floor to the ceiling of the second story, which forms the floor of the plaintiff's premises, is about twelve feet. A belt runs from the motor to a so called idler or intermediate shaft, upon which there is a heavy, thirty-inch pulley, and from the intermediate shaft to each side of the defendant's premises, just below the ceiling, belts run to two so called main lines of shafting which are about one hundred ten feet in length. There are pulleys on these main

lines of shafting from which power is directly communi-
cated to the various machines. All of the shafting is affixed
to ceiling beams. The machines are in operation for the
entire day, except for the luncheon period, and usually run
during the night until 9 P.M. The method employed by
the defendant of furnishing power to the machine shop is a
usual and ordinary one, but "the details of the shafting
and pulleys are not so nearly perfect or precise as possible."
There is a slight variation from "true" in the large pulley
on the intermediate shaft, and some of the small pulleys
on the main shafting are not perfectly round, and "it would
be probably better from the standpoint of vibration if the
motor were attached directly to a beam instead of being
hung as it is on a plank between two beams." The pur-
pose of so hanging the motor was to secure more head room.
The master found, however, that in the setup and trans-
mission of motor power to the machinery, the defendant
had not been negligent, and that the arrangement was
reasonably sound and proper.

While the power is on in the defendant's premises, there
is a constant and disturbing noise, in the nature of a heavy
rumbling, in the plaintiff's premises, and a "very consider-
able vibration of the entire floor of his premises," except
in the rear room. The vibration is particularly noticeable
above the motor, but spreads throughout the entire room.
Although the noise or rumble, of itself, might reasonably
be expected in such a building, the vibration of the floor
and the accompanying noise are such that there is an in-
terference with the conduct of the plaintiff's business. The
actual production of his factory has not been diminished
since the operation of the defendant's shop began, but the
work done by his operatives in the large room is more
difficult. The plaintiff's machines are not shaken or vi-
brated to such an extent as to interfere with their mechani-
cal operation, but the female operatives are made uncom-
fortable, rendered more nervous, have frequent headaches,
make more frequent mistakes in stitching, and, in general,
do not work as efficiently as they would without the dis-
turbance described. To a certain extent their health is

thereby affected. The plaintiff's bookkeeping and clerical work is done under a strain. The vibration and noise in the plaintiff's premises could be decreased somewhat if the motor were placed on, or supported from, the floor, but to support it and all shafting from the floor would be impracticable. The only certain way to eliminate the noise and vibration now experienced on the third floor would be to furnish power to the defendant's machines by individual motors and to remove all motive power from the ceiling. The defendant has been granted what is known as "A1 priority" by the Federal authorities, and motors are procurable in the market to make such an installation practical. The defendant has approximately eighteen "drill presses" that are driven by individual motors.

The defendant's shop is devoted exclusively to the production of munitions and war appliances, all either under contracts with the United States government or under subcontracts with those who have such contracts. War requirements have created an imperative necessity for the products manufactured and the defendant is under constant pressure from the military and naval branches of the government to make deliveries. Most, if not all, of the products require the highest degree of refinement, in some cases to one thousandth of an inch. While the defendant's shop can be changed over from the present method of conveying the power so that the power of its machines would be furnished by individual motors, such a change, unless made gradually, would result in a serious interruption of the defendant's operation and a delay in turning out its products. The defendant covenanted in its lease that the premises would not be used for any purposes except light machine work. The defendant appealed from the final decree in each suit granting injunctive relief.

We are of opinion that the findings of the master establish that a private nuisance is maintained by the defendant, at least in so far as the plaintiff Godard is concerned, of such a character that he is entitled to injunctive relief, unless the circumstance that the defendant is engaged in war production requires that such relief should not be

granted. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 488–491. *Stodder* v. *Rosen Talking Machine Co.* 241 Mass. 245, 250–251. *Cumberland Corp.* v. *Metropoulos*, 241 Mass. 491, 497–498, 502–503. *Nugent* v. *Melville Shoe Corp.* 280 Mass. 469, 472–473. See *Shea* v. *National Ice Cream Co. Inc.* 280 Mass. 206; *Swensen* v. *Marino*, 306 Mass. 582. The facts found disclose something more than a fanciful injury. *Stodder* v. *Rosen Talking Machine Co.* 241 Mass. 245, 250. Compare *Wade* v. *Miller*, 188 Mass. 6.

The defendant contends that the facts found do not disclose a nuisance for the reason that it does not appear that a normal person would be affected by what goes on. It is true that the standard in a case of this character is what ordinary persons, acting reasonably, have a right to demand in the circumstances. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 489. While the question whether a nuisance exists is one of fact, the court is empowered to draw inferences of fact from the facts reported. *Cumberland Corp.* v. *Metropoulos*, 241 Mass. 491, 502. It would seem from the master's report that there are at least thirty-four women who operate the plaintiff's machines, and that the bookkeeper is a woman. Where, as here, it was found that "the women" are affected, we think that it is a logical inference that the acts complained of would affect ordinary persons acting reasonably. There is no suggestion in the record that any of the female employees are not ordinary persons. Moreover, there is a specific finding that the vibration of the plaintiff's floor and the accompanying noise are an interference with the conduct of the plaintiff's business.

There is no suggestion that the business of either the plaintiff or the defendant is not proper. Each is a tenant of the bank. Each is engaged in war production, and, in determining whether an injunction shall issue in the circumstances, it is highly desirable that these factors be taken into account. To a reasonable extent, the benefit or advantage to be derived by the plaintiff is to be considered with reference to the disadvantage that the defendant may suffer if it is required to abate the nuisance. No hard and fast line can be drawn in the consideration of the question

that arises.  In the cases at bar, however, the facts found disclose that means are available to the defendant to abate the nuisance, although the change required, unless made gradually, would result in a serious interruption of the defendant's operations.  The defendant admits, however, that Godard, apparently before suit was brought, notified it that the noises and vibration were interfering with his business, and that they constituted a nuisance as to him, and that he asked it to remedy the conditions.  The defendant, however, took the position that there was no nuisance and, as far as appears, took no steps to remedy conditions.  This is not a case where there is nothing that the defendant can do as a reasonable and practical matter to abate the nuisance.  So far as appears, it has at hand the means available to bring this about.  As was said in *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, at page 492: "The issue is not squarely presented between wiping out the defendant's industry at this place or refusing injunctive relief.  That would be a different and more difficult question."  *Stodder* v. *Rosen Talking Machine Co.* 241 Mass. 245, 251.  *Shea* v. *National Ice Cream Co. Inc.* 280 Mass. 206, 210.  See *Sprague* v. *Sampson,* 120 Maine, 353, 356.

The defendant contends that no injunction should be granted for the reason that it is engaged in war work.  The importance of this work cannot be minimized or disregarded.  It is well settled that, within constitutional limitations, legislation may make things nuisances that were not, or make things lawful that were nuisances, although by so doing, the use or value of property is affected.  *Sawyer* v. *Davis,* 136 Mass. 239, 241.  *Commonwealth* v. *Parks,* 155 Mass. 531, 532.  *Marshall* v. *Holbrook,* 276 Mass. 341, 346.  Moreover, in times of war, a government contractor may be able to point to a special privilege which has been created by law or by executive or governmental regulation having the force and effect of law, so that he may be excused from the performance of obligations which otherwise he would be required to observe.  And this also may be true in the case of persons who are not contractors, but who come within the sweep of governmental regulations.  See *State*

*Realty Co.* v. *Greenfield,* 110 Misc. (N. Y.) 270; *Roxford Knitting Co.* v. *Moore & Tierney, Inc.* 265 Fed. 177; *Highland* v. *Russell Car & Snow Plow Co.* 279 U. S. 253. We are of opinion that the rights of the parties are not governed by the principles just referred to.

The defendant contends, however, that, by virtue of a Federal statute, the facts found by the master constitute a complete defence to these suits. It refers to § 9 of 54 U. S. Sts. at Large, Part I, 885, 892; U. S. C. (1940 ed.) Title 50 ["War"], § 309. This section, in effect, empowers the President to place an order with any individual or firm for the production of any article required by the government that such individual or firm usually produces or is capable of producing. Compliance with all such orders is obligatory and takes precedence over all other orders and contracts theretofore placed with such individual or firm. There are further provisions for the conscription of industry and for punishment by fine and imprisonment of anyone who fails to comply. There is nothing, however, in this section that authorizes, either expressly or by necessary implication, the maintenance of a nuisance by a person or firm operating under its provisions. It is assumed that the defendant's shop is devoted exclusively to production that comes within the purview of said § 9, but this fact does not deprive neighboring property owners of their remedy for annoyances and injuries, especially where, as here, the maintenance of a nuisance is not necessarily incident to the defendant's operation, and where the acts amounting to a nuisance may be rendered unnecessary by the installation of practical devices which, the master has found, are readily procurable by the defendant in the market. Under the broad powers conferred by said § 9, the Federal government may operate any essential war industry, if the circumstances warrant. The power of the Federal government to enact necessary legislation, subject only to constitutional limitations, renders it unnecessary for the government to depend upon favor of courts. *Driver* v. *Smith,* 89 N. J. Eq. 339, 345–346. *In re Stegman,* 112 N. J. Eq. 72. The legislation now under consideration seems to

be ample to cover any situation. It is true that the master found that unless the change over of the defendant's power arrangement was made gradually, it would result in a serious interruption of the defendant's operations and a delay in the turning out of its products. But we are of opinion that these findings, taken with the others, do not deprive the plaintiff Godard of the right to have the nuisance abated. Godard is also engaged in government work. It is unnecessary for us even to attempt to determine whether coats for the soldiers are as important as the devices that the defendant manufactures. Where an important public interest would be prejudiced, the reasons for denying an injunction may be compelling. See *Harrisonville* v. *W. S. Dickey Clay Manuf. Co.* 289 U. S. 334, 338. But we are of opinion that the balancing of the respective rights and obligations of the plaintiff Godard and the defendant does not require that an injunction should be denied. The case of *Lester* v. *G. L. Tarlton Contractor, Inc.* 45 Fed. Sup. 994, is distinguishable.

There are no specific findings that the bank sustained any damage. It does appear that there is a "very considerable vibration" of the entire third floor of the building in question, and that the vibration of the floor and the accompanying noise interfere with the conduct of the plaintiff Godard's business. Godard's machines are not shaken or vibrated to such an extent as to interfere with their mechanical operation. It was said in *Metropoulos* v. *MacPherson*, 241 Mass. 491, 503, that it is common knowledge and experience that the oscillations and vibrations found in that case, if sufficiently permanent, would have a tendency to bring on structural changes resulting in slow but sure disintegration and decay. In that case the operation of the defendant's mill caused the earth in the immediate vicinity to tremble and the vibration extended to the plaintiff's house where the master observed a slight movement of the floor, more distinct in some places than in others, and in one room the window frame rattled slightly.

It is settled that a reversioner may maintain an action for an injury done to his reversion, and the injury may be

of such a character that he may invoke a court of equity for the protection of his rights.  *McDonnell* v. *Cambridge Railroad*, 151 Mass. 159.  *Frawley* v. *Forrest*, 310 Mass. 446, 453.  The defendant, in its lease, covenanted, among other things, that the premises would not be used for any purpose except "light machine work," and also that it would not carry on any trade or occupation thereon that is "improper, noisy, offensive . . . [or] injurious to any persons or property."  The defendant's contention in its brief that the provision as to "light machine work" was inserted in typewriting and consequently controls the other provisions which were printed, cannot be considered.  The record before us affords no ground for the contention.[1]  See *Gorey* v. *Guarente*, 303 Mass. 569, 570, 571.  The defendant contends that if some covenant of the lease was breached, the remedy at law is adequate.  Upon the record, however, the defendant must be held to have waived this question. *Frawley* v. *Forrest*, 310 Mass. 446, 456, and cases cited.

We are of opinion that the bank is entitled to injunctive relief, and that the decree in each case must be affirmed with costs.

*Ordered accordingly.*

---

[1] The defendant's lease was set forth in the printed record.  There was nothing to indicate which, if any, parts of it were typewritten and which were printed. — REPORTER.